The S. D. Seavey Company, Respondent, vs. Campbell, Appellant.

*September 5—November 28, 1902.*

*Sales: Married women: Separate business: Estoppel: Purchase by '·uccessor: Instructions to jury.*

1. Where defendant, a married woman, had for some time been purchasing goods from the plaintiff company through her husband as her agent, for use in her separate business, and, without notification to plaintiff that she had ceased business or that her husband was no longer her agent, the goods in controversy were bought by the husband and shipped to the same address as the former goods, the plaintiff in good faith believing that they were bought by defendant for use in her separate business, although they were in fact received and used by another concern, defendant was estopped to deny that the goods were bought for use in her business.

2. There being no evidence impeaching the good faith of the plaintiff company in charging the goods to defendant except disputed testimony that it had been notified by defendant's husband that she had retired from the business, and the circumstances being

such, if that notice was not in fact given, as to justify plaintiff in believing in good faith that the purchase was made for defendant, a charge to the jury that if plaintiff sold the goods without notice that defendant had ceased to do business, or facts to put it upon inquiry, and *supposing* defendant to be the purchaser, it was entitled to recover, was not erroneous, especially in view of a further charge that if plaintiff, having no notice that defendant had ceased to do business, sold and *in good faith* charged the goods to her, plaintiff should recover.

APPEAL from a judgment of the superior court of Douglas county: CHARLES SMITH, Judge. *Modified and affirmed.*

The plaintiff, a trading corporation at Superior, brought suit in justice's court against defendant to recover $143.50 and interest for camp supplies alleged to have been sold by it to the defendant in December, 1899. After judgment in the justice's court, an appeal was taken to the circuit court, where the case was tried. The evidence showed that in the year 1899 the defendant, a married woman, owning a separate estate, was carrying on a logging business a few miles north of the village of Iron River under the name of Campbell & Co., the business being managed wholly by one O. H. Campbell, her husband; that beginning in June, 1899, she purchased supplies for her lumber camp from the plaintiff during the summer and fall, all of such purchases being made by her husband, O. H. Campbell; that at some time in the fall of 1899 the Campbell Lumber Company, a corporation, was organized, of which O. H. Campbell was a stockholder and officer; that about the 25th day of November, 1899, *Mrs. Campbell* ceased to do logging, and leased all of her equipment and horses to the Campbell Lumber Company; that on the 27th of November, 1899, the Campbell Lumber Company opened an account with the plaintiff, and purchased supplies for their logging operations, and continued to make such purchases during the winter; that O. H. Campbell ordered all or nearly all of the goods bought by the Campbell Lumber Company; that on December 7, 1899, a car load of hay, amounting to

$123.75, and on December 13th a bill of groceries, amounting to $19.75, were sold by the plaintiff, as it claims, to the defendant in this action, but, as the defendant claims, to the Campbell Lumber Company; that the goods were ordered by O. H. Campbell, who claims that prior to that time he had told Mr. Seavey (plaintiff's manager) that Campbell & Co. had quit business, and that all goods ordered after that time would be for the Campbell Lumber Company. On the other hand, Mr. Seavey denies that Mr. Campbell ever gave him any such notice, and claims that he supposed the goods were bought for the defendant. It appears that the goods were in fact shipped to Iron River, and were billed by the plaintiff to Campbell & Co., but that they were received and used by the Campbell Lumber Company. The jury returned a verdict for the plaintiff, and from judgment thereon the defendant appeals.

For the appellant there was a brief by *Sanborn, Luse, Powell & DeForest,* and oral argument by *L. K. Luse.*

*H. V. Gard,* for the respondent.

The following opinion was filed September 23, 1902:

WINSLOW, J. That a married woman may estop herself by her acts is an entirely reasonable doctrine, and is substantiated by authority, if authority be needed. *Nelson v. McDonald,* 80 Wis. 605, 50 N. W. 893. In the present case the only ground upon which liability was claimed was that the defendant was estopped from denying that the goods were bought for use in her separate business. In support of this claim the plaintiff's evidence tended to show that the defendant had been purchasing goods of the plaintiff for several months, through her husband, as her agent, for use in her separate business; that, without any notification that she had ceased business or that her husband was no longer her agent, the goods in controversy were bought by the husband, and shipped to the same address as the former goods, the plaintiff

supposing in good faith that they were bought by the defendant for use in her separate business, while as a matter of fact they were received and used by another concern. If these were the facts, all the necessary elements of a good estoppel seem to be present. The defendant, however, claimed and introduced evidence tending to show that her agent notified the plaintiff that the defendant had quit business and that all the goods ordered by him after that would be for the Campbell Lumber Company. This was really the only substantial question in dispute in the case, and it is manifest that, unless there was some prejudicial error in the rulings upon evidence or in the charge of the court, the judgment must be affirmed. While some complaints are made in the briefs as to the rulings upon evidence, we have not, upon examination, found any of the rulings which seem in any way prejudicial, or which seem important enough to deserve specific treatment.

As to the charge of the court, a little examination seems necessary. The trial judge, after stating that the case was not very complicated, and that the questions on which it turned were very simple and plain, stated briefly the claims of the parties, and the fact that prior to December, 1899, the defendant had been purchasing goods of the plaintiff through Mr. Campbell as her agent. He then proceeded as follows:

"Now, when she ceased to do business, and Mr. Campbell was no longer her agent to purchase goods, it was her duty so to advise the plaintiff; and if you find that the plaintiff sold the goods in issue having no notice that Campbell & Co. had ceased to do business, or facts to put the *Seavey Company* upon inquiry, and sold the goods supposing Campbell & Co. to be the purchaser, it (the plaintiff) is entitled to recover the amount of said two items, with interest at the rate of six per cent. per annum from the date of the last of said two items; and this whoever was in fact the purchaser, unless thereafter plaintiff discovered that the Campbell Lumber Company was in fact the purchaser, and accepted it as its creditor in place of the Campbell Company. If, then, by a preponderance of the evidence, you find that plaintiff had no notice that Mr.

Campbell had ceased to have authority to purchase goods for the defendant, she having ceased to do business, and sold and in good faith charged the goods to the Campbell Company, and do not find that plaintiff thereafter transferred the credit to the Campbell Lumber Company, accepting it as plaintiff's creditor, you will find for plaintiff, and assess its damages at the sum of $161.65, the same being said items in issue and interest; otherwise you will find for the defendant no cause of action."

The defendant excepted to the statement that the questions were simple and plain, and also excepted to that part of the charge which states that it was the duty of the defendant to advise the plaintiff that Mr. Campbell was no longer her agent, and that, if plaintiff sold the goods without such notice, or facts to put it upon inquiry, and supposing defendant to be the purchaser, then the plaintiff should recover. While the charge is not as full as might be desired, still we think that, taken together, it fairly conveys to the jury the legal principles which should govern them in their deliberations. It is true, as defendant claims, that the mere fact that the plaintiff "supposed" that the defendant was the purchaser is not sufficient to make the defendant liable. It must appear that, in view of the facts, the plaintiff was entitled to believe, and did in good faith believe, that the defendant was the purchaser. We should have been better pleased had this idea been brought out with greater distinctness, but we think that when, in the latter part of the charge, the jury are told that if they find that "plaintiff had no notice that Mr. Campbell had ceased to have authority to purchase goods for the defendant, she having ceased to do business, and sold *and in good faith* charged the goods to the Campbell Company, . . . you will find for the plaintiff," the question is practically covered. Really, there was no tangible evidence impeaching the good faith of the plaintiff's action charging the goods to the defendant except the claim that it had been notified by Campbell of the retirement of *Mrs. Campbell* from business. If the notice

was not in fact given, all the circumstances seem to justify the plaintiff in believing in good faith that the purchase was made in behalf of the defendant; so the trial court naturally directed the attention of the jury to this one question, which, under the evidence, was really the turning point of the case.

The view we have taken of the case renders unnecessary the discussion of any further questions. We have found no reversible errors.

*By the Court.*—Judgment affirmed.

The appellant moved for a rehearing. On November 28, 1902, the motion was denied without costs, except disbursements and clerk's fees to be taxed in favor of the appellant, and the mandate was amended so as to read as follows:

*By the Court.*—The judgment appealed from is modified by deducting therefrom $11.93, being interest erroneously allowed. and as so modified the judgment is affirmed.