MERRELL, Appellant, vs. PURDY and wife, Respondents.

*September 12—October 9, 1906.*

*Married women: Promissory notes: Separate property: Estoppel.*

A married woman, though possessing separate property, is not liable in an action at law upon a promissory note signed by her with her husband, where it was not given for the purchase price of any property bought or received by her, was not in any way necessary or beneficial to the management or enjoyment of her separate property or business, and did not relate to her personal services, and where there were no facts creating an estoppel.

APPEAL from a judgment of the circuit court for Columbia county: E. RAY STEVENS, Circuit Judge. *Affirmed.*

This is an action at law upon a joint and several promissory note for $3,000 given by the defendants, who are hus-

`band and wife, to the plaintiff August 28, 1901, payable one year after date. The defendant *Helen M. Purdy* defended on the ground that the debt represented by the note was her husband's debt and that she signed the note as accommodation maker only. The case was tried before the court and a jury, and the following facts were practically undisputed:

Prior to the year 1876 the defendant *E. S. Purdy* and one Henry Merrell (father of the defendant *Helen M.*) were partners in the drug business at Portage, Wisconsin, and borrowed $3,000 of one Weir, for which they gave the firm note. Henry Merrell died in 1876 (the Weir note being still unpaid), leaving a will, which was duly probated, in which will he made a specific bequest of $3,000 to Gordon H. Merrell, his brother and the husband of the plaintiff, and bequeathed the residuum of his estate, after payment of specific bequests, to his three children, of whom *Helen M.* was one. The date of the settlement of the estate does not appear, but it is admitted that *Helen M.* received some property under the will prior to January, 1883, and invested it in business real estate in the city of Portage. In December, 1876, the executors of the Merrell estate, of whom *E. S. Purdy* was one, took $3,000 from the estate and took up the Weir note and turned it over to Gordon H. Merrell upon his legacy. Whether this was received by Gordon temporarily as security or permanently in payment of his legacy is disputed. Gordon held the Weir note until January 9, 1883, *E. S. Purdy* paying the interest regularly, at which time the defendants executed and delivered their joint and several note to Gordon for $3,000 and the Weir note was surrendered. Gordon Merrell died in 1888 and the plaintiff, as his heir at law, became the owner of the note. *E. S. Purdy* paid the interest regularly, and in August, 1901, the defendants gave to the plaintiff the note in suit to take up the note of 1883. Upon this note interest was paid by *E. S. Purdy* up to June 1, 1905, when the pay-

ments ceased and this action was brought. In 1882 the defendant *Helen M. Purdy* commenced the erection of a store building on her lot in the city of Portage, and the plaintiff claims that at some time in the spring of that year *E. S. Purdy* came to her husband and stated that *Helen* could not build her building unless he would lend her the money represented by the Weir note, and that the note of 1883 was executed in pursuance of that conversation. The conversation was denied by *E. S. Purdy* and there was no proof that *Helen* had any knowledge of it. There was also evidence offered by the plaintiff to the effect that in 1899 the defendant *Helen* stated to one Miss Pettibone, who represented the plaintiff,. that her husband had transferred his stock in the drug business to her so that his creditors could not trouble him, but that she considered *Mrs. Merrell's* debt sacred. This conversation was denied by *Mrs. Purdy*. The court submitted to the jury questions for a special verdict, which with their answers are as follows:

"(1) Did the defendant *E. S. Purdy* represent to the plaintiff and to her husband, before the note of January 9, 1883, was executed, that the defendant *Helen M. Purdy* could not put up her building unless the note of January 9, 1883, was accepted in place of the Weir note? *A.* Yes. (2) Did the defendant *Helen M. Purdy* in 1899 represent to Miss Pettibone, representing the plaintiff, that the property of the defendant *E. S. Purdy* had been transferred to her for the purpose of avoiding claims against him? *A.* Yes. (3) If your answer to the second question be 'Yes,' then did the plaintiff rely upon such representation when she accepted the note of August 28, 1901? *A.* Yes."

The plaintiff moved for judgment on the special verdict against *Helen M. Purdy,* which motion being denied she moved to set aside the verdict and for a new trial, which motion being also denied, judgment was rendered against the defendant *E. S. Purdy* for the amount of the note with costs, and in favor of the defendant *Helen M. Purdy* against the

plaintiff without costs. From that part of the judgment in favor of *Helen M. Purdy* the plaintiff appeals.

*Daniel H. Grady,* for the appellant.

For the respondents there was a brief by *J. H. Rogers* and *A. H. Blatchley,* and oral argument by *Mr. Blatchley.*

WINSLOW, J. The question presented is the question as to the liability of a married woman upon a promissory note in an action at law. The principles governing the contracts of married women are fairly well settled in this state and may be briefly stated as follows: (1) A married woman, whether possessed of a separate estate or not, may purchase property, real or personal, and give her obligation for the purchase price, which obligation will bind her at law as if she were a *feme sole,* provided the title of the property purchased passes to her; and this she may do regardless of the purpose to which she intends to devote such property. *Kriz v. Peege,* 119 Wis. 105, 95 N. W. 108. (2) A married woman possessed of a separate estate or business, or who is rendering personal services to some person other than her husband, may make all contracts necessary or convenient for the management or enjoyment of the estate or the carrying on of the business, or relating to her personal services, and such contracts will be enforceable at law. *Mueller v. Wiese,* 95 Wis. 381, 70 N. W. 485; *Ritter v. Bruss,* 116 Wis. 55, 92 N. W. 361. (3) A married woman possessing separate property may bind herself at law by estoppel. *S. D. Seavey Co. v. Campbell,* 115 Wis. 603, 91 N. W. 655. (4) A married woman may by proper instrument charge her separate property for any obligation, even for her husband's debt, but this charge is only enforceable in equity. *Mueller v. Wiese, supra; Hollister v. Bell,* 107 Wis. 198, 83 N. W. 297; *Loizeaux v. Fremder,* 123 Wis. 193, 101 N. W. 423.

It is only necessary to apply these propositions to the undisputed facts of the present case to arrive at a conclusion as

to the correctness of the judgment. It will be at once seen
that the fourth proposition has no possible application to the
case as there was no attempt here to charge *Mrs. Purdy's* sep-
arate estate, and the action is a straight action at law to en-
force a legal liability. It is equally apparent that the first
proposition does not apply because *Mrs. Purdy* neither bought
nor received any separate property when she signed the note
of 1883 or the renewal note of 1901.

This leaves only the second and third propositions to be
considered. At the time of the execution of the joint note in
1883 *Mrs. Purdy* had a separate estate composed of the store
building and lot, and possibly some remaining interest in the
residuum of the estate of Henry Merrell, although the evi-
dence leaves this latter element in doubt. Assuming such to
be the fact, however, it is impossible to see how the execution
of that note by *Mrs. Purdy* was in any way necessary or bene-
ficial to the management or enjoyment of any of her property.
The evidence is positive and uncontradicted that none of the
money represented by that note went into her real estate.
True, there is evidence that *Mr. Purdy* in 1882 represented
to Gordon Merrell that *Mrs. Purdy* could not build her build-
ing without it, but there was no evidence that she authorized
such representation, and, as said before, the evidence was un-
contradicted that it did not, in fact, go into the building. Did
the giving of that note in any way benefit or conserve her
residuary interest in the estate of Henry Merrell? The an-
swer to this question depends upon whether Gordon Merrell
had released his claim for the $3,000 legacy prior to the exe-
cution of the note or whether he released it in consideration
of such execution. If that claim had previously been re-
leased, then it is plain that the estate could in no way be ben-
efited by the subsequent execution of the note. The written
release was not found and the evidence does not fix its date.
Two witnesses testified as to the time it was given, viz., *Mr.
Purdy* and the plaintiff. *Mr. Purdy* testifies that it was

given, he thinks, in December, 1876, and the plaintiff testifies that it was given in the spring of 1882. There is absolutely no testimony that it was given at any later date or in consideration of the execution of the note of 1883; hence there is no room for a claim that the estate of Henry Merrell received any benefit by the execution of the note. The second proposition, therefore, has no application to the case.

The claim of estoppel is equally untenable. Accepting the answers of the jury in the special verdict as true, no estoppel is shown. The representation found to have been made by *Mr. Purdy* was not authorized by *Mrs. Purdy,* nor was it shown to have caused any change of position on the part of Gordon Merrell. The representation made by *Mrs. Purdy* in 1899 as to the transfer of her husband's property to her was followed by no change of position on the part of *Mrs. Merrell.* The new note was simply a renewal of the old. No security was surrendered or lost by *Mrs. Merrell* by reason of this renewal, nor was there any change of position.

The view we have taken of the case renders immaterial any discussion of the rulings upon evidence.

*By the Court.*—Judgment affirmed.