CITIZENS STATE BANK OF SHAWANO, Respondent, vs. CAYOUETTE, imp., Appellant.

*March 6—April 29, 1919.*

*Bills and notes: Liability of wife as signer: Husband as her agent: Benefit to her separate estate.*

1. In an action upon a promissory note executed by husband and wife, but which the wife claimed was executed by her as surety only, the evidence is *held* to sustain findings by the jury to the effect that the husband was the agent of the wife in obtaining the loan, that her separate property received the benefit of the money so obtained, that said money was necessary and convenient for the use and enjoyment of her separate estate, and that she authorized her husband to withdraw funds deposited to her credit in the plaintiff bank.

2. The use of the borrowed money to procure a liquor license so as to keep the wife's property as saloon property under the Baker law (chs. 188, 484, Laws 1907; sec. 1565*d*, Stats.) was a benefit or understood to be a benefit to her separate property.

SIEBECKER, ROSENBERRY, and OWEN, JJ., dissent.

APPEAL from a judgment of the circuit court for Shawano county: EDGAR V. WERNER, Circuit Judge. *Affirmed.*

For the appellant the cause was submitted on the brief of *Kittell, Jaseph & Redfield* of Green Bay.

For the respondent there was a brief by *Dillett & Winter* of Shawano, and oral argument by *P. J. Winter*.

KERWIN, J.    This is an action on a promissory note for $300 executed by Sam Cayouette and his wife *Anna Cayouette,* the appellant, as maker, and payable to respondent, *Citizens State Bank of Shawano,* and indorsed by one Paul Winter.    Defendants admitted the execution of the note. *Anna Cayouette* alone answered, and set up the defense that she was a married woman and executed the note as surety only for her husband and that the proceeds of the note were for the sole benefit of her husband, and that neither she nor her estate was benefited thereby.

On the trial the jury found that Sam Cayouette was em-
ployed by his wife, *Anna Cayouette,* as her agent in securing
and obtaining the loan for her from the respondent bank on
June 29, 1915; that the separate property and separate estate
of appellant received the benefit of the money obtained on
said loan; that said money so obtained was necessary and
convenient for the use and enjoyment of appellant's separate
estate and property; that appellant authorized her husband,
Sam Cayouette, to withdraw funds deposited to her credit in
the bank by issuance of his checks.   Judgment was entered
for the plaintiff on the verdict, and *Anna Cayouette* ap-
pealed.

It is insisted that the verdict is contrary to the evidence.
Under this head several propositions are argued which we
shall briefly consider.

1. It is contended that the husband, Sam Cayouette, was
not the agent of his wife in obtaining the loan.   There is evi-
dence tending to show that Sam Cayouette went into the sa-
loon business on the property of his wife, the appellant here,
and borrowed money for that purpose, and that his wife was
interested in continuing the saloon business on her property.
The dealings and property transactions between Sam and his
wife tend strongly to show that they were acting together
for the benefit of *Mrs. Cayouette's* property and that in the
transactions under consideration regarding the saloon busi-
ness and borrowing of the money for which the note in suit
was given the defendant *Anna Cayouette* was interested and
Sam, her husband, was acting for her.   We are therefore
convinced, upon a review of all the evidence, that in obtain-
ing the loan for which the note in suit was given the finding
of the jury to the effect that Sam was the agent of his wife
in obtaining the loan is supported by the evidence.

2. It is further contended by the appellant that her sepa-
rate property was not benefited by the loan.   The finding of
the jury against the appellant's contention on this point is
also well supported by the evidence.   In considering this

finding it is helpful to examine the course of conduct of Sam and his wife in their dealings regarding their property. It appears that appellant owned the saloon property and that Sam conveyed to her other property for the purpose of defrauding his creditors. Sam seems to have made the contracts, and *Anna*, or *Anna* and Sam, received the profits. The whole scheme appears to have been devised for the purpose of obtaining money when needed by Sam or *Anna*. The evidence tends to show a system of doing business by *Anna* and her husband, Sam, of borrowing money with the intention of avoiding payment, and that money borrowed by Sam and used for the appellant was a part of the scheme. We are satisfied that the finding to the effect that the separate property and estate of the wife received benefit from the money obtained on the loan is supported by the evidence. *Bouck v. Enos*, 61 Wis. 660, 21 N. W. 825; *Holway v. Sanborn*, 145 Wis. 151, 130 N. W. 95; *Barlow v. Foster*, 149 Wis. 613, 136 N. W. 822; *Somers v. Germania Nat. Bank*, 152 Wis. 210, 138 N. W. 713.

3. It is further argued that the money obtained on the loan for which the note in suit was given was not convenient or necessary for the use and enjoyment of the wife's separate property. The jury found that it was, and we think the finding is supported by the evidence. *Kriz v. Peege*, 119 Wis. 105, 95 N. W. 108. The obtaining of the license so as to keep the property as saloon property under the Baker law [Laws 1907, chs. 188, 484; sec. 1565*d*, Stats.] was a benefit or understood to be a benefit to the separate estate and property of the appellant under the finding of the jury supported by the evidence. *State ex rel. Marvin v. Larson*, 153 Wis. 488, 140 N. W. 285; *Zodrow v. State*, 154 Wis. 551, 143 N. W. 693.

4. The jury also found that the appellant authorized her husband, Sam Cayouette, to withdraw funds deposited to her credit in the respondent bank. The husband and wife

living together as shown in this case, in connection with their dealings in all property matters, together with other evidence, convince us that the jury was entitled to find that the husband was authorized to withdraw funds deposited in the plaintiff bank to the credit of appellant.

5. It is also contended by respondent that the appellant, *Anna Cayouette,* is estopped from denying liability. There is considerable evidence supporting the respondent's contention upon this point, but the findings of the jury being supported by the evidence we do not deem it necessary to pass upon this point. *H. W. Wright L. Co. v. McCord,* 145 Wis. 93, 128 N. W. 873; *S. D. Seavey Co. v. Campbell,* 115 Wis. 603, 91 N. W. 655; *Somers v. Germania Nat. Bank,* 152 Wis. 210, 138 N. W. 713.

6. It is further argued that no action at law can be maintained against a wife upon a note executed by her as surety only. Since the findings are supported by the evidence this contention is without merit.

7. It is also insisted that there was error in the admission of evidence. We shall not extend this opinion by a discussion of this point. It is sufficient to say that we find no prejudicial error under this head.

*By the Court.*—The judgment is affirmed.

SIEBECKER, J. (*dissenting*). I cannot concur in the affirmance of the judgment of the circuit court. The law governing the case is clearly stated in the head-note to *Bailey v. Fink,* 129 Wis. 373, 109 N. W. 86:

"A married woman cannot be charged in an action at law upon a note signed by her with her husband as surety for his debt, where her act in becoming a party to the note was not necessary or convenient to the use and enjoyment of her separate property or to the carrying on of her separate business, and did not relate to her personal services. The facts that the payee changed his position (as by releasing a mortgage on the husband's chattels) on the faith of the wife's

signing the note, and that the note specifically stated that she charged her separate estate with the payment thereof, are not available as grounds of liability at law."

See, also, *Merrell v. Purdy,* 129 Wis. 331, 109 N. W. 82.

I have read the evidence and find none whatever which in any sense tends to show that the defendant *Anna Cayouette* in any manner, directly or indirectly, made Sam Cayouette, her husband, her agent to borrow money or to attend to her business.   I think the finding of the jury on this question is wholly unsupported by evidence.   It is undisputed that Sam, the husband, obtained the license to conduct the saloon for himself, and that neither he nor Mr. Winter had any conversation or dealing with *Anna Cayouette* about borrowing this money from the bank.   The evidence affirmatively shows that she knew nothing of the fact that her husband borrowed money from the bank in June, and it appears that she knew nothing about it until the following October, after Sam had used it for his individual saloon business and Winter was pressing him to have her sign the note.   Mr. Winter testifies he had no communication with her on the subject. The representatives of the bank do not claim that they had any dealings with *Anna Cayouette* or that she was to sign the note and charge her separate estate with it, and the evidence is affirmative to the effect that she was not solicited to sign the note until October, after the loan was made to Sam Cayouette in June.   No witness was adduced who testified to any transaction tending to show that the husband was employed by the wife as agent or that she authorized him to obtain and use the money for the benefit of her estate.   The trial court and jury evidently thought that under the circumstances the money obtained from the bank was necessarily used by the husband in his saloon business and that this use operated for the benefit of the wife's separate estate, and that under such circumstances she could be held on her subsequent promise to sign as surety.   But this is untenable, for the reason that she cannot be held responsible for any finan-

cial obligation her husband incurred in conducting his sepa-
rate saloon business, although he used her building. Such
use of her property by him is in no legal sense for the benefit
of her separate estate. But it is claimed that the separate
property of the wife received the benefit of the money her
husband borrowed, because the facts and circumstances show
that the husband represented her in securing a license in his
name for the business to be conducted in her separate prop-
erty, and thus to preserve the right to have this property de-
voted to the liquor business. There is, however, no evidence
showing that the money in fact in any way benefited her es-
tate, and the affirmative evidence is to the effect that she did
not desire to have her husband conduct a saloon business,
that she received no rent from him for the premises, that
she did not know that her husband had borrowed money for
the business until four months after he started the business
for himself, at which time she first learned of this loan be-
cause he was threatened with having his license revoked and
his business ruined and the liquor business discontinued in
her building. Even then there is nothing to show that she
desired to have the saloon business continued in her building
in order to preserve the right to have it used for such a busi-
ness. How the jury spelled out that the loan from the bank
benefited her separate estate under these facts and circum-
stances is not perceived. The reasonable and the only per-
missible inferences of all the facts and circumstances of the
case sustain and conclusively demonstrate to my mind that
the husband obtained the loan without his wife's knowledge
for his personal use and that the wife's separate estate was
not benefited by the loan, and that it plainly appears that the
bank and the guarantor, upon discovering, four months after
the loan was made, that the husband was in failing financial
circumstances, prevailed upon him to have his wife, who up
to this time was ignorant of the loan, sign his note as surety
and that she did so when her act did not benefit her separate
property or business and she did not agree nor intend to

charge her separate estate.    In my opinion the verdict is not supported by the evidence and the judgment should be reversed.

ROSENBERRY and OWEN, JJ.   We concur in the foregoing opinion of Mr. Justice SIEBECKER.