STATE EX REL. MARVIN, Respondent, vs. LARSON, Appellant.

*February 22—May 31, 1913.*

*Intoxicating liquors: Licenses: Statute construed.*

Sec. 1565*d*, Stats. (Laws of 1907, ch. 484), does not give to the owner of premises which were under license for saloon uses on June 30, 1907, the power, by refusing to lease such premises to any aspirant for a license, to make that aspirant eligible to receive a license although he has never occupied the premises for saloon purposes and the ratio limit fixed by the section has already been exceeded. The proviso in said section means that, notwithstanding the ratio limit, the owner of property under license for saloon purposes on June 30, 1907, may by himself or his tenant continue its use for such purposes (if properly licensed) thereafter, and any person in possession of such premises as lessee on said date, if thereafter deprived of opportunity to continue their use by refusal of the owner to lease for such purposes, by destruction of the building by fire or the elements, or by the operation of other provisions of the law (*e. g.* the establishment of a no-license area), may, if properly licensed, continue the business at some other location.

APPEAL from a judgment of the circuit court for La Crosse county: E. C. HIGBEE, Circuit Judge. *Affirmed.*

For the appellant there was a brief by *W. F. & A. C. Wolfe,* and oral argument by *W. F. Wolfe.*

For the respondent there was a brief by *Bunge & Bosshard,* and oral argument by *Otto Bosshard.*

The following opinion was filed March 11, 1913:

WINSLOW, C. J.    This is an action in the name of the state, brought in the circuit court for La Crosse county and on leave of court, to enjoin the defendant from maintaining a saloon in the city of La Crosse.    The plaintiff's claim is that the defendant's saloon license, though granted by the common council of the city, was void because issued contrary to the provisions of sec. 1565$d$, Stats. (Laws of 1907, ch. 484), hence that the saloon was a public nuisance under sec. 1563, Stats., and subject to abatement in this equitable action under sec. 3180$a$, Stats.

The concrete question presented by the case is simply as to the proper construction of sec. 1565$d$, supra.    That section reads as follows:

"On and after the first Tuesday in July, 1907, the number of persons and places which may be licensed to sell, deal and traffic in malt, ardent, spirituous or intoxicating liquors in the various towns, villages and cities in this state, shall be and hereby are limited as follows:

"One such license may be granted to and issued for each two hundred and fifty inhabitants or fraction thereof in any town, village or city in this state, such population to be determined by the last preceding state or national census, provided, however, that in all such cities, villages and towns where a greater number of licenses may have been granted or issued and in force on or prior to the thirtieth day of June, 1907, than would be permissible under the foregoing limitation, it shall be lawful and the local authorities are hereby authorized in their discretion to grant and issue licenses equal in number to those granted or issued and in force on or prior to said last-mentioned day; but no additional licenses in number shall be granted or issued in any such city, village or town until the increase in population thereof brings the same within the foregoing limitation, and provided further that licenses be granted or issued to persons for those places or locations for which licenses were issued or granted on or prior to the thirtieth day of June, 1907, unless by reason of a re-

fusal of the owner to lease the same for such purposes, their destruction by fire or the elements or the same be refused by operation of law or under the provisions of this act, then and in either of such cases such license may be issued or granted to some other location."

The facts are that on June 25, 1912, when the council granted a license to the defendant, it had already granted 148 saloon licenses for the year beginning July 1, 1912. This was considerably more than one license for each 250 inhabitants of the city, hence the council had no power to grant a license to the defendant, unless he came within the exceptions in the proviso. He claims to be within those exceptions, because, prior to the granting of his license, he had obtained from one Peterson, the owner of certain premises in the city which were used for saloon premises on June 30, 1907 (but not since that date), a written refusal to lease said premises to him for saloon purposes for the ensuing year. The defendant had never been a tenant of the Peterson premises, and had not been in the saloon business anywhere for several months prior to June 30th, but commenced the saloon business in other premises July 1, 1912, under his supposed license. The argument is that under the proviso of the law any one who owns premises which were under license for saloon uses June 30, 1907, can, by refusing to lease the same to any aspirant for a license, make that aspirant eligible to receive a license, although he has never occupied the premises for saloon purposes and the ratio limit fixed by the law has been already exceeded.

We are very certain that such is not the true construction of the law. To our minds the purpose is plain and the expression of that purpose fairly clear. The main thought of the section was doubtless to set a limit, which should adjust itself as the population increased or diminished, beyond which the number of saloons should not go. While this was the dominant idea, it was also realized that in some places this limit had been passed, and it was thought that, where prem-

ises were already in use for saloon purposes, as well as where a tenant was obliged to remove his business by circumstances over which he had no control, exception might be made in favor of such premises or such tenant. The theory evidently was that the law might operate too harshly and summarily if provision were not made to protect, in some degree at least, investments already lawfully made.

It seems to us absurd to suppose that the intention of the law was to give to any man the power, year after year, to confer upon any third person he might choose eligibility to receive a saloon license in disregard of the ratio limit, simply because of the ownership of real estate which was under license June 30, 1907. This would establish a new kind of privilege or easement running with the real estate, which would enable the owner at each recurring license period to exercise a controlling influence in determining the number of saloons to be licensed above the ratio limit, and at the same time to make money out of that control.

Perhaps the real intent of the proviso is not expressed as clearly as might be desired, but we find no difficulty in construing it as follows: Notwithstanding the ratio limit, the owner of property under license for saloon purposes June 30, 1907, may by himself or his tenant continue its use for such purposes (if properly licensed) thereafter, and any person in possession of such premises as lessee June 30, 1907, if thereafter deprived of opportunity to continue their use by refusal of the owner to lease the same for such purposes, destruction of the building by fire or the elements, or the operation of other provisions of the law (*e. g.* the establishment of a no-license area), may, if properly licensed, continue the business at some other location.

The defendant here does not belong to either class, hence the judgment is right.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, without costs, on May 31, 1913.