ZODROW, Plaintiff in error, vs. THE STATE, Defendant in error.

*September 20—October 28, 1913.*

*Constitutional law: Police power: Intoxicating liquors: Regulation of traffic: Licenses: Limitation of number: Statutes: Validity: Construction.*

1. With respect to the traffic in intoxicating liquors, the legislature in the exercise of the police power has plenary power to prohibit it altogether, or to restrict it in any reasonable manner.

2. Sec. 1565*d*, Stats.—which prohibits the issuance of saloon licenses in excess of one for each 250 inhabitants, except in towns, villages, or cities where more than that number were in force on June 30, 1907, in which cases the same but no greater number may be issued, for the same places only (with certain exceptions) until the increase in population is such as to bring the number within the prescribed limit,—does not unreasonably affect the rights of either persons or property in the sale of liquors, and is valid.

3. If, incidental to such lawful regulations, it so happens that, temporarily, certain places or persons are given a preference, or that rights before enjoyed are limited or entirely destroyed, such result does not affect the validity of the act.

4. In enacting the provisos in sec. 1565*d*, it was the legislative purpose reasonably to protect persons engaged in, and places used for, the traffic in liquors at the time the law went into

effect, rather than to permit the whole number of licenses then outstanding to be reissued indefinitely; and where, under such provisos, a city grants licenses in excess of one for every 250 inhabitants, it can grant them for *new places* only to the owners or lessees of premises used for saloon purposes on and continuously since June 30, 1907, who have been deprived of the use of such premises for saloon purposes in one or more of the ways mentioned in the second proviso.

5. The result is, two classes of cities are created by the act: one issuing licenses within the prescribed ratio, the other issuing licenses in excess of the ratio but not in excess of the number in existence at the time the law went into effect. The former can issue licenses to new persons and new places at their discretion; the latter to new places only as specified in the second proviso.

6. Defendant in this case not having been either owner or lessee of the premises used for saloon purposes at the time and continuously since the law went into effect, the license granted to him by the city of Milwaukee (which was in the second class) was void and he was properly convicted of selling without a license.

TIMLIN, J., dissents in part.

APPEAL from a judgment of the municipal court of Milwaukee county: A. C. BACKUS, Judge. *Affirmed.*

Plaintiff in error was convicted in the municipal court of Milwaukee county and sentenced to pay a fine for having sold at retail intoxicating liquors without first obtaining a legal license therefor from the city of Milwaukee.

On June 30, 1907, the plaintiff in error resided in the town of Wauwatosa. He then had no license for the sale of intoxicating liquors at retail, was not engaged in the saloon business, and the premises he now occupies were not then occupied for saloon purposes, nor was there any saloon license outstanding therefor. Since that time, and prior to 1913, the territory in which his saloon is now located was, and now is, annexed to the city of Milwaukee. On July 5, 1913, upon proper application of the plaintiff in error, the common council of the city of Milwaukee granted, and the city clerk issued, to him a license for the sale of intoxicating

liquors at retail for the place in which his saloon was located
at the time of the alleged illegal sale. On June 30, 1907,
the territory now comprising the city of Milwaukee con-
tained 2,224 legally licensed saloons. In July, 1913, the
population of Milwaukee was 400,000. This would entitle
it to only 1,600 saloons under the first limitation of
sec. 1565d, Stats. 1911. But by complying with the pro-
visos of said section, 2,224 licenses might be issued, provided
no lapse had occurred since 1907. It appeared that the li-
cense of plaintiff in error was one of a batch of 1,800 voted
for as a whole. The law under which it was issued reads as
follows:

"Section 1565d. On and after the first Tuesday in July,
1907, the number of persons and places which may be li-
censed to sell, deal and traffic in malt, ardent, spirituous or
intoxicating liquors in the various towns, villages and cities
in this state, shall be and hereby are limited as follows:

"One such license may be granted to and issued for each
two hundred and fifty inhabitants or fraction thereof in any
town, village or city in this state, such population to be de-
termined by the last preceding state or national census, pro-
vided, however, that in all such cities, villages and towns
where a greater number of licenses may have been granted or
issued and in force on or prior to the thirtieth day of June,
1907, than would be permissible under the foregoing limita-
tion, it shall be lawful and the local authorities are hereby
authorized in their discretion to grant and issue licenses equal
in number to those granted or issued and in force on or prior
to said last-mentioned day; but no additional licenses in num-
ber shall be granted or issued in any such city, village or town
until the increase in population thereof brings the same
within the foregoing limitation, and provided further that
licenses be granted or issued to persons for those places or lo-
cations for which licenses were issued or granted on or prior
to the thirtieth day of June, 1907, unless by reason of a re-
fusal of the owner to lease the same for such purposes, their
destruction by fire or the elements or the same be refused by
operation of law or under the provisions of this act, then and

in either of such cases such license may be issued or granted to some other location."

Defendant below brings the case to this court upon a writ of error to review the judgment of the municipal court finding him guilty and imposing a fine.

*David S. Rose,* for the plaintiff in error.

For the defendant in error there were briefs by the *Attorney General, J. E. Messerschmidt,* assistant attorney general, *Edward Yockey,* district attorney, and *Henry S. Sloan,* assistant district attorney, and oral argument by *Mr. Messerschmidt* and *Mr. Sloan.*

A brief was also filed by *Russell Jackson* as *amicus curiæ* in support of the law.

VINJE, J.    The plaintiff in error claims that sec. 1565*d*, Stats. 1911, is unconstitutional because (a) it violates the Fourteenth Amendment to the federal constitution in that it denies to all the property owners within the city the equal protection of the laws; (b) it creates a monopoly in favor of 2,224 places and against 30,000 places within said city; (c) it discriminates in favor of 2,224 property owners in said city; (d) it enables the owners of 2,224 pieces of property to exact extortionate rents because they are protected from competition; (e) it is class legislation because it builds up a class and clothes that class with special privileges; (f) it destroys the right of home rule which the city of Milwaukee enjoyed before the adoption of the constitution, and which was not taken away by the constitution; for while the law fixes the number of saloons that the city may have, it denies to the people of the city the right to say where those saloons shall be located; (g) it deprives persons of their property without due process of law, for by depriving any property owner of the right to lease his property for any purpose for which his neighbor may lease his, it takes from him one of

the attributes of property; (h) the law is unreasonable be-cause it confines the saloons of the city to the identical places they occupied on the 30th day of June, 1907, and for all time they may not be changed, except in infrequent in-stances, where cases are brought within the exceptions of the law, without regard to changes in conditions that of necessity come within the evolutions that are characteristic in munici-pal life; and (i) it takes property without compensation.

The above objections to the constitutionality of the law urged by plaintiff in error are set forth in detail, not for the purpose of separate treatment in the opinion, but to show that they were raised and that none have been overlooked by the court. Whether all the rights therein claimed to attach to property or to persons are in fact rights or privileges which the constitution or the laws recognize, it is needless to discuss or determine in this case, for it is established by early de-cisions of this court, as well as by other courts, that, as re-spects the liquor traffic, the legislature in the exercise of the police power has plenary authority to prohibit it altogether, or to restrict it in any reasonable manner. *State ex rel. Henshall v. Ludington,* 33 Wis. 107; *Wightman v. Devere,* 33 Wis. 570; *License Cases,* 5 How. 504, 12 L. ed. 256; 1 Woollen & T. Intox. Liq. sec. 79 *et seq.* and cases cited. The justification for the exercise of the police power in restrain-ing or prohibiting the sale of intoxicating liquors has been stated and restated by the courts time and again. It may be summed up as resting upon the fundamental principle that society has an inherent right to protect itself; that the preser-vation of law and order is paramount to the rights of indi-viduals or property in manufacturing or selling intoxicating liquors; that the sobriety, health, peace, comfort, and happi-ness of society demand reasonable regulation, if not entire prohibition, of the liquor traffic. Unrestricted, it leads to drunkenness, poverty, lawlessness, vice, and crime of almost every description. Against this result society has the in-

herent right to protect itself—a right which antedates all constitutions and written laws—a right which springs out of the very foundations upon which the social organism rests; a right which needs no other justification for its existence or exercise than that it is reasonably necessary in order to promote the general welfare of the state.

Tested by these fundamental principles, and without going into a detailed discussion of the objections raised against the constitutionality of the law, it cannot be said that it unreasonably affects either the rights of persons or property in the sale of intoxicating liquors. It permits a saloon for every 250 inhabitants, presumably adequate facilities for quenching all lawful thirsts. It reasonably protected all persons engaged in, and places used for, the sale of intoxicating liquors at the time it went into effect. If, incidental to these lawful regulations, it so happens that, temporarily, certain places or persons are given a preference, or that rights theretofore enjoyed are limited or entirely destroyed, such result does not affect the validity of the act. *Mugler v. Kansas,* 123 U. S. 623, 8 Sup. Ct. 273, and cases cited *ante.* As soon as cities grow so that they will be within the ratio limit, or as soon as they vote to remain within it, all preferences disappear. The preferences created result from the effort to temporarily protect business that was established at the time the law went into effect. In *State ex rel. Marvin v. Larson,* 153 Wis. 488, 140 N. W. 285, the constitutionality of the law was assumed, and we perceive no reason now why such assumption was not well founded.

The question of whether or not the proof shows the plaintiff in error to have been properly convicted depends upon the construction to be given to the two provisos of the law. In *State ex rel. Marvin v. Larson, supra,* the court said:

"The main thought of the section was doubtless to set a limit, which should adjust itself as the population increased or diminished, beyond which the number of saloons should

not go. While this was the dominant idea, it was also realized that in some places this limit had been passed, and it was thought that, where premises were already in use for saloon purposes, as well as where a tenant was obliged to remove his business by circumstances over which he had no control, exception might be made in favor of such premises or such tenant. The theory evidently was that the law might operate too harshly and summarily if provision were not made to protect, in some degree at least, investments already lawfully made." Pages 490, 491.

Upon further reflection and reconsideration of the question we think the construction there indicated is the correct one. It was evidently the legislative purpose in enacting the provisos to reasonably protect persons engaged in, and places used for, the traffic at the time the law went into effect rather than to permit the whole number of licenses then outstanding to be reissued indefinitely. If the latter had been its purpose it would have been easy to have said that in cities exceeding the ratio the present number of licenses might be issued till the increase in population brought the number within the ratio. But it did not do that. It made the further proviso that licenses be granted or issued to persons for those places or locations for which licenses were issued or granted on or prior to the 30th day of June, 1907, unless they came within the exceptions contained in the proviso, thus restricting the power of cities, where they grant licenses in excess of the ratio, to grant them for *new places* only to the owner or lessee of premises used for saloon purposes on and continuously since the 30th day of June, 1907, who has been deprived of the use of such premises for saloon purposes in any of the ways mentioned in the last proviso of the section.

The idea was to protect existing liquor business in such a way as to create as little hardship as possible and at the same time to bring the number of licenses down to the ratio as speedily as lapses in the reapplication therefor, and the growth of the city, would produce such result. By this

method existing business was adequately protected, and two causes, lapses and growth, allowed to operate to finally bring all cities within the prescribed ratio. The result is, two classes of cities are created by the act: one issuing licenses within the prescribed ratio, and the other issuing licenses in excess of such ratio but not in excess of the number of licenses in existence at the time the law went into effect. The former can issue licenses to new persons and new places in their discretion; the latter to new places only as specified in the second proviso. *State ex rel. Marvin v. Larson,* 153 Wis. 488, 140 N. W. 285. The plaintiff in error was neither the owner nor lessee of premises used for saloon purposes at the time and continuously since the law went into effect, hence the city of Milwaukee, which issued licenses in excess of the ratio, was powerless to grant him a license for a new location. He was therefore lawfully convicted and sentenced.

*By the Court.*—Judgment affirmed.

TIMLIN, J. (*dissenting*). This case turns upon the construction of sec. 1565*d,* Stats., otherwise ch. 484, Laws of 1907. But it is not a suit for construction of the statute. The point at issue is whether the plaintiff in error has been proven guilty. The construction of the statute is before us only so far as it is involved in the question of the guilt or innocence of the accused under the pleadings and evidence.

The instant case differs somewhat from *State ex rel. Marvin v. Larson,* 153 Wis. 488, 140 N. W. 285. The latter was a suit in equity in which it was established by findings of the trial court that prior to the license there in question the city had issued licenses in number more than one for each 250 persons. Also that the number of licenses outstanding on June 30, 1907, was 154. Six of these places were thereafter used and kept for other purposes and three other places torn down and destroyed and not rebuilt, thus leaving not to exceed 145 places which had licenses on June 30, 1907.

After 148 licenses were granted by one resolution, the council by separate resolution granted a license to John J. Murphy, by another separate resolution a license to Jos. F. Kujawa, making 150 licenses, and then by separate resolution granted the license in question and thereafter granted two other licenses for two old places for which licenses were in force for the year ending July 1, 1907. These facts appear from the findings but are not noticed in the opinion of this court, but they demonstrate that at the time license was issued to Larson the city had exhausted its power to issue licenses.

After mature reflection I am convinced that nothing is gained in the way of interpretation by creating or imagining several classes of cities affected by this act. It is commonplace that classification is easy and interminable, and we should not deceive ourselves into the belief that we have gained a step forward in the solution of a problem because we have achieved the easy but often unhelpful step of segregation of a class. Again, so far as classification rests on the fact that the city had on June 30, 1907, more retail liquor licenses issued and outstanding than one for every 250 persons, La Crosse in the case mentioned and Milwaukee in the instant case would be in the same class. We must constantly keep in mind that the city council is not by this act obligated to issue license to any person or place.

In *State ex rel. Marvin v. Larson, supra,* this court agreed upon a construction of the statute in question substantially to the effect that a city might exceed the limitation of one license to 250 persons only in case such additional licenses were within the number in force and outstanding on June 30, 1907, and only to applicants proposing to conduct the retail liquor business at a place licensed on June 30, 1907, except in cases where the owner had refused to lease his premises for saloon purposes, or in case of the destruction of the premises by fire or by the elements, or in case where the license of such former place is refused by operation of law, or in case where

by the provisions of said ch. 484, limiting the licenses to one for every 250 persons, the license is refused. In these four cases licenses might be issued for some other location. The statute is difficult of interpretation, but this seems to me a fair interpretation considering all its provisions. We have there the several commands: (1) retail liquor licenses are limited in number to one for each 250 inhabitants; (2) in places where a greater number of licenses than above allowed have been in force, etc., on June 30, 1907, the number then in force may be thereafter issued; (3) licenses shall be granted or issued for those places for which licenses were granted or issued on June 30, 1907, except in four specified instances; (4) in these last four instances license may be issued or granted to some other location and to "a person," not necessarily to a former licensee.

It is manifest that these commands cannot all be complied with unless we give "places" priority of choice or the first call for a license. If there are the same places in existence as were licensed on June 30, 1907, all desiring a license, no owners refusing to lease for such purpose, no place destroyed by fire or the elements, no place refused by operation of law or under the provisions of ch. 484, *supra,* and each place is represented by a person of proper character, such places fix and limit the number of licenses that may be issued. Where any of these places drop out of the saloon business by reason of any or either of these four enumerated causes, the number of licenses which may be issued is not thereby diminished. But where any of the places licensed on June 30, 1907, drops out of the retail liquor business for any cause not covered by either of the four enumerated causes aforesaid, the number of licenses in excess of one for each 250 persons which can be lawfully issued is diminished accordingly. This follows from the rule *expressio unius exclusio alterius.* In no case can the number of licenses issued exceed those in force on June 30, 1907, and in case those in force on the latter date

were equal to or less than one for each 250 persons, no license can issue in excess of one for each 250 persons. This construction follows from the fact that places are fixed, definite, and ascertainable and are described as entitled to a license, not necessarily to the same persons who held a license at that place on June 30, 1907, but to some qualified person, while "persons" must in all cases possess the qualifications prescribed in sec. 1548, Stats., namely, they must be such persons as the common council deem proper to conduct such business. In other words, an existing place presenting a competent applicant may have the refusal of a liquor license unless it is eliminated by some one of the four causes specified. To restate this: When a place is eliminated for some cause not specified, the number of licenses which the council may issue in excess of one for each 250 persons is reduced, but when a place is eliminated for one of the specified causes such number is not reduced. Whether the city had on June 30, 1907, licenses outstanding in excess of one for each 250 persons, equal to one for each 250 persons, or less than that, places not eliminated from the eligible list presenting a competent applicant ought to be first considered, and provided the council decides to grant that number of licenses and a competent applicant is presented must issue first to the old places.

In *State ex rel. Marvin v. Larson, supra,* it was established that the license there in question was issued *after* the council had issued licenses amounting to more than one for every 250 persons, while in the instant case no such concession is made, but the council issued at one and the same time 1,822 licenses, among which was the defendant's license. This exceeded the number of licenses which the city would be authorized to grant at the ratio of one to every 250 persons, which according to the United States census of 1910, of which we take judicial notice, would have been 1,496. The population of Milwaukee at that time was 373,857. Some additional territory was included within the city limits, but

the proof is defective in not showing the census population of this additional territory, and we are unable to take judicial notice thereof because we are not informed when the city limits were extended or what complete census precincts, if any, were so brought into the city. If the words in this statute, "the last preceding state or national census," mean that last preceding the enactment of the statute in question instead of that last preceding the issue of the license, we would be thrown back on the national census of 1900, and in that case, at the ratio of one license to each 250 persons, the number of licenses would be about 1,460. I am inclined to think the statute refers to the national census next preceding the issue of the license, because an increase in population is mentioned which could only be ascertained from the census next preceding the time of issuing the license. There could be no increase if we were obliged to go back to the national census next preceding the enactment of the statute. So that among these 1,822 licenses issued in one batch there were at least 1,460 or 1,496 valid licenses. Which were valid and which invalid? The only proof offered tending to show that the license of the accused was invalid was to the effect that he was not a licensed retail liquor dealer in 1907 and there was no saloon at his place at that time. There was no evidence showing or tending to show how many of the places licensed in 1907 were discontinued by either of the four causes mentioned. There were issued and outstanding in Milwaukee on June 30, 1907, 2,172 retail liquor licenses, and in the territory since legally annexed to this city fifty-two of such licenses, making 2,224. I have some doubt whether by annexation of territory the city acquired the power to issue fifty-two licenses additional to those outstanding in the city on June 30, 1907. The statute does not expressly provide for such condition, but this phase of the case was not argued and is not relevant to the guilt or innocence of the accused, so I merely suggest the doubt. But taking the

smaller number, 2,172, how many of these were eliminated during the six years between June 30, 1907, and June 30, 1913, for causes not specified in the statute in question? How many were eliminated for some one of the four specified causes? The evidence is silent on these points. If the old places requesting a license plus the old places eliminated or discontinued by reason of any one of the four specified causes equaled 1,822, then all the licenses issued in one bunch, including that of the accused, are valid. If an excessive number of licenses were issued by this issue of 1,822 licenses, how can we say that plaintiff's license is among the invalid excess? The statute does not say that when the place has lapsed the license must issue to any former licensee, and it does say that the license may be issued to some place other than that eliminated for one of the four causes specified. If no place has been eliminated during these six years for a cause other than one of the four specified causes, the city is entitled to issue 2,172 licenses at least, first to old places, and if there are not so many old places because of some dropping out for either one of the four specified causes, then to new places altogether equal in number to the number of old places remaining plus the number of old places so dropped out. The statute seems to be clear upon the latter point. Therefore, without evidence that there were 1,822 old places remaining out of the 2,172 places licensed on June 30, 1907, and without evidence that there was no case where a former location had dropped out for any one of the four specified causes, no case is made out against the accused, because we must presume that his license was issued in lieu of a license outstanding on June 30, 1907, in a case where some old location or place was no longer eligible for a license because of some one or more of the four specified causes. It follows that the invalidity of the license in question has not been established. This should reverse the judgment of conviction for lack of evidence to support it.