STATE EX REL. GRAND BAZAAR LIQUORS, INC., a Wisconsin corporation, Plaintiff-Petitioner-Respondent and Cross-Appellant,

v.

CITY OF MILWAUKEE, a municipal corporation, Defendant-Respondent-Appellant and Cross-Respondent.†

Court of Appeals

*No. 79–1712. Submitted on briefs February 17, 1981.—Decided April 7, 1981.*
(Also reported in 306 N.W.2d 255.)

† Petition to review granted.

For the defendant-respondent-appellant and cross-respondent the cause was submitted on the briefs of *James B. Brennan,* city attorney, and *William J. Lukacevich,* principal assistant city attorney.

For the plaintiff-petitioner-respondent and cross-appellant the cause was submitted on the brief of *Peregrine, Marcuvitz, Cameron & Peltin, S.C.,* and *Alan Marcuvitz* and *Michael J. Jassak,* of Milwaukee.

Before Decker, C.J., Moser, P.J., and Cannon, J.

DECKER, C.J. This case centers on the constitutionality of sections 90–25.1(2) and (3) of the Milwaukee City Code of Ordinances. The pertinent portions of section 90–25.1 are:

90–25.1. SALE OF COMMODITIES OTHER THAN INTOXICATING LIQUOR AND FERMENTED MALT BEVERAGES BY CLASS "A" LICENSEES.
(1) DEFINITIONS.
"Premises" shall mean a premises for which a Class "A" intoxicating liquor license has been granted.
. . . .
(2) SALE OF OTHER COMMODITIES PROHIBITED. Every person, firm or corporation holding a Class "A" retailer's intoxicating liquor license shall receive no less than one-half of its income for the premises from sales of intoxicating liquor and fermented malt beverage.
(3) EXCEPTIONS. This ordinance shall not apply to any person, firm or corporation holding a Class "A" retailer's intoxicating liquor license for a premises, provided such person, firm or corporation holds a Class "A" retailer's intoxicating liquor license on the date of passage of this ordinance for such premises and such person, firm or corporation continuously renews such license for such premises thereafter.
. . . .

In a declaratory judgment proceeding, the trial court declared section 90–25.1(2) constitutionally valid, and section 90–25.1(3) invalid. We reverse that portion of the judgment declaring section 90–25.1(3) of the ordinance invalid, and affirm the balance of the judgment.

We do not address the denial of petitioner's application for a Class "A' liquor license, upheld by the trial court, because this issue has been abandoned.[1]

The challenged ordinance was approved by the Milwaukee Common Council on June 14, 1977, and became effective when published June 30, 1977.[2] That August, petitioner Grand Bazaar Liquors, Inc., applied for a Class "A" liquor license for the license year ending June 30, 1978. Petitioner's application revealed that it was owned equally by a corporate subsidiary of Jewel Companies, Inc. (Jewel), and a city of Milwaukee resident who was a corporate officer of Jewel. Petitioner proposed to operate the liquor store in the same building as a Jewel grocery store, with the stores separated by a permanent wall and having separate entrances and exits. Petitioner conceded to the trial court that the two stores were in one "premises" as defined in the challenged ordinance.

The application was denied in November of 1977 after a hearing, and petitioner sought both a writ of mandamus commanding the city to issue the license, and a judgment declaring the entire ordinance unconstitutional. The city appeals from that portion of the trial court's judgment declaring section 90–25.1(3) invalid. Petitioner cross-appeals from that portion of the judgment declaring section 90–25.1(2) valid.

## AUTHORITY TO REGULATE

The United States Supreme Court has noted that because of the twenty-first amendment to the Constitution,[3]

---

[1] Counsel for petitioner requested dismissal of this cross-appeal issue in a letter dated December 15, 1980, responding to our order for supplemental briefs.

[2] Milwaukee, Wis., Ordinances §90–25.1, Part 3.

[3] That amendment reads, in pertinent part: "Section 2. The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."

states have greater than normal police powers in regulating intoxicating beverages. *California v. La Rue,* 409 U.S. 109, 114 (1972). *See Moedern v. McGinnis,* 70 Wis. 2d 1056, 1068–70, 236 N.W.2d 240, 246 (1975). Wisconsin has delegated broad powers to municipalities to regulate the sale of intoxicating liquor, which are limited only when those regulations conflict with statutory provisions. Sec. 176.43, Stats. Municipalities are expressly given authority to grant retail liquor licenses "as they deem proper . . . ." Sec. 176.05. Section 90–25.1 of the Milwaukee City Code of Ordinances was enacted within this framework of broad police power.

## VALIDITY OF SECTION 90–25.1(2)

Petitioner argues that section 90–25.1(2), which requires every holder of a Class "A" liquor license to receive at least one-half of its income for the premises from liquor sales, is unconstitutional because it (1) constitutes an unreasonable and arbitrary exercise of the police power; (2) denies equal protection of the laws; and (3) violates the commerce clause of the United States Constitution.

Ordinances are presumed constitutional, and the party attacking an ordinance must prove its invalidity beyond a reasonable doubt. *Clark Oil & Refining Corp. v. City of Tomah,* 30 Wis.2d 547, 553, 141 N.W.2d 299, 302 (1966). "Every presumption must be indulged to sustain the law if at all possible and, wherever doubt exists as to a legislative enactment's constitutionality, it must be resolved in favor of constitutionality." *Moedern v. McGinnis, supra,* 70 Wis.2d at 1068, 236 N.W.2d at 246.

The ordinance must be sustained if there is any reasonable basis for its enactment, and the courts will only interfere with the exercise of police power by a municipality when it is clearly illegal.

The function of a reviewing court is solely for the purpose of determining whether legislative action under the power delegated to the municipality passes boundaries of its limitations or exceeds boundaries of reason. *Clark Oil, supra,* 30 Wis.2d at 554, 141 N.W.2d at 302–03 (footnotes omitted).

### *Unreasonable & Arbitrary Exercise of Police Power*

The city suggests as a reasonable basis for the ordinance that it serves to limit the number of premises licensed to sell intoxicating beverages in a fashion which encourages licensees to obey liquor regulations. Petitioner does not question that these objectives serve the public health, safety, morals, and welfare, but argues that section 90–25.1(2) of the challenged ordinance is not a means rationally related to these ends.

The ordinance makes ineligible for Class "A" liquor licenses that class of potential applicants most likely to circumvent the legitimate end of limiting the number of retail liquor outlets in the city. Licensing only an adequately capitalized liquor business producing more than one-half of its revenue from liquor and fermented malt beverages tends to assure compliance with municipal and state liquor store regulations because of the desire to protect the invested capital and its income from the hazard of license revocation if regulations were violated. When businesses of this type are unprofitable or marginally profitable, or when the sale of liquor yields but a small percentage of the revenues, the incentive to comply with regulations disappears and compliance deteriorates. Those who receive more than one-half of their income from the sale of other than intoxicating beverages are likely to have the necessary capital, buildings, fixtures, and desire to enter the retail liquor business. Section 90–25.1(2) is rationally related to the

legitimate municipal objective of limiting the number of licensed premises.

Section 90–25.1(2) also encourages adherence to liquor regulations by limiting licenses to those who have a greater financial stake in retention of their licenses, and who will develop a greater familiarity with applicable liquor laws. A retailer who will lose at least half his income from loss of a license is more likely to know and obey applicable liquor regulations. Section 90–25.1(2) is rationally related to the objective of encouraging adherence to liquor regulations.

Petitioner argues that we cannot indulge in these presumptions to uphold the rationality of section 90–25.1(2) because there is not "one shred of evidence in the record upon which the assertions . . . can be grounded." A similar argument was rejected by the United States Supreme Court in *Hughes v. Alexandria Scrap Corp.*, 426 U.S. 794 (1976), where the federal district court, in striking down a statutory amendment, had observed that the state of Maryland had "not proffered a scintilla of factual support for [its] assumption" advanced as justification for the challenged legislation. *Id.* at 812. As the Supreme Court stated, "The District Court demanded too much." *Id.* A reviewing court is limited to determining whether the basis advanced in support of the legislation is rational—neither the state nor the city in this case is "compelled to verify logical assumptions with statistical evidence." *Id. See also Chicago & N.W. Ry. v. La Follette*, 43 Wis.2d 631, 648, 169 N.W.2d 441, 449 (1969) :

If there is any reasonable basis upon which the legislation may constitutionally rest, the court must assume that the legislature had such fact in mind and passed the act pursuant thereto. The court cannot try the legislature and reverse its decision as to the facts. All facts necessary to sustain the act must be taken as conclusively found by the legislature, if any such facts may be reasonably conceived in the mind of the court.

Petitioner asserts in its brief that "the true purpose of the ordinance as enacted was to restrict competition by prohibiting certain merchants from obtaining liquor licenses for their retail grocery stores in the City of Milwaukee." Petitioner misconstrues our standard of review and fails to meet its burden of proof with such an assertion. We are to indulge in every presumption possible to sustain an ordinance, and will search for any reasonable basis for its enactment. If one exists, our review is ended.

That contrary assumptions may just as logically and rationally be drawn from the same record misconstrues this court's function in reviewing a constitutional challenge to an ordinance, and does not meet petitioner's burden of proving unconstitutionality of the ordinance beyond a reasonable doubt.

*Denial of Equal Protection*

Petitioner contends that section 90–25.1(2) of the ordinance results in an irrational and arbitrary classification between retailers who receive one-half or more of their income from sales of intoxicating beverages and those who do not.

A legislative classification is presumed to be valid. The burden of proof is upon the challenging party to establish the invalidity of a statutory classification. Any reasonable basis for the classification will validate the statute. . . .
Judicial response to a challenged legislative classification requires only that the reviewing court locate some reasonable basis for the classification made. The public policy involved is for the legislature, not the courts, to determine. *Omernik v. State,* 64 Wis.2d 6, 18–19, 218 N.W.2d 734, 741–42 (1974) (footnotes omitted).

Petitioner argues that the classification does not meet the fivefold test of *Omernik v. State, supra,* 64 Wis.2d at 19, 218 N.W.2d at 742:

(1) All classification must be based upon substantial distinctions; (2) the classification must be germane to the purpose of the law; (3) the classification must not be based on existing circumstances only; (4) the law must apply equally to each member of the class; and (5) the characteristics of each class should be so far different from those of other classes as to reasonably suggest the propriety of substantially different legislation. The basic test is not whether some inequality results from the classification, but whether there exists any reasonable basis to justify the classification. [Footnotes omitted.]

The basis advanced for the classification is that it results in less retail liquor outlets and encourages adherence to liquor regulations. Because of these legitimate municipal objectives, the challenged classification is based upon at least two substantial distinctions: (1) a large number of applicants likely to have means, derived from any source, sufficient to enter the retail liquor business versus a smaller number of applicants with means derived primarily from liquor sales; and (2) applicants with economic incentive to obey liquor regulations versus applicants with a lesser economic incentive to obey. The challenged classification is germane to the purpose of limiting the number of retail liquor outlets because it excludes those applicants least likely to have an economic incentive to comply with regulations and is also germane to the purpose of restricting licenses to those most likely to obey liquor laws.

The classification is not based on existing circumstances only, and applies equally to the members of each class. The two classes are sufficiently different to justify limiting licensing to those retailers who have greater incentive to obey liquor laws. The characteristics of the excluded class are sufficiently different from those of

the class eligible for Class "A" licenses to reasonably suggest the propriety of substantially different legislation. The excluded class derives sufficient income from the sale of other than intoxicating beverages to financially enable its members to enter into the retail liquor business but is without the economic incentive to avoid the effect of loss of a liquor license for noncompliance with liquor regulations.

Petitioner's assertions that the classifications are not supported by evidence in the record and are based on economic considerations misconstrue our standard of review, as discussed above. Petitioners also challenge the fifty-percent distinction as arbitrary. Our standard of review does not allow us to substitute our personal notions of good public policy for those of the common council. As the United States Supreme Court has recently noted:

This inquiry employs a relatively relaxed standard reflecting the Court's awareness that the drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one. "Perfection in making the necessary classifications is neither possible nor necessary." . . . As long as the classificatory scheme chosen . . . rationally advances a reasonable and identifiable governmental objective, we must disregard the existence of other methods of allocation that we, as individuals, perhaps would have preferred. *Schweiker v. Wilson*, 49 U.S.L.W. 4207, 4211 (Mar. 4, 1981) (citation omitted).

Petitioner has not met its burden of establishing the invalidity of the challenged classification beyond a reasonable doubt.

### Commerce Clause Violation

Petitioner asserts that section 90–25.1(2) of the ordinance is unconstitutional because it interferes with inter-

state commerce.[4] The United States Supreme Court has stated that. because of the twenty-first amendment,[5] "a State is totally unconfined by traditional Commerce Clause limitations when it restricts the importation of intoxicants destined for use, distribution, or consumption within its borders." *California v. La Rue, supra,* 409 U.S. at 114 (quoted in *Moedern v. McGinnis, supra,* 70 Wis.2d at 1069, 236 N.W.2d at 246, where the court upheld a quota system for granting Class "B" retail liquor licenses). Traditional commerce clause limitations require weighing the legitimate local interest served by the ordinance against the burden imposed on interstate commerce. *See, e.g., Great Atlantic & Pacific Tea Co. v. Cottrell,* 424 U.S. 366, 371–72 (1976). Here, the legitimate local interests served by the ordinance include limiting the number of retail liquor outlets in the city and encouraging adherence to liquor regulations. Those interests implicate the broad police powers conferred by the twenty-first amendment and add a presumption in favor of validity. *California v. La Rue, supra,* 409 U.S. at 118–19. Cases cited by petitioner where no legitimate local interest was asserted and the twenty-first amendment was not implicated, *e.g., H.P. Hood & Sons v. Dumond,* 336 U.S. 525 (1949); *American Motors Sales v. Division of Motor Vehicles,* 445 F. Supp. 902 (E.D. Va. 1978), are inapplicable.

Petitioner's commerce clause challenge faces the strongest presumption of validity, but petitioner has offered no evidence of the burden imposed on interstate commerce other than the assertion that "a review of the ordinance clearly indicates that it will *affect* interstate commerce." [Emphasis added.] Petitioner has not met its burden of proving beyond a reasonable doubt the unconstitutionality of subsection (2).

---

[4] *See* U.S. Const., art. I, §8, cl. 3.

[5] *See* note 3, *supra.*

## VALIDITY OF SECTION 90–25.1(3)

Section 90–25.1(3) of Milwaukee Ordinances excepts from section 90–25.1 those retailers who receive less than one-half their income from sales of intoxicating beverages and hold Class "A" liquor licenses on the date of the ordinance's passage, for so long as they continuously renew their licenses. The trial court declared this section unconstitutional on equal protection grounds.

In the absence of findings of adjudicative facts, this court will not defer to a trial court's determination of the constitutionality of an ordinance. *Clark Oil, supra,* 30 Wis.2d at 552–53, 141 N.W.2d at 302. Here, the trial court found no adjudicative facts because the case was decided on cross-motions for summary judgment. The practical effect of bilateral summary judgment motions is that of a stipulation of facts. *Powalka v. State Mutual Life Assurance Co.,* 53 Wis.2d 513, 518, 192 N.W.2d 852, 854 (1972).

We reiterate that in its challenge to section 90–25.1(3), petitioner faces the strong presumption of validity enjoyed by ordinances regulating liquor sales and must prove unconstitutionality beyond a reasonable doubt. We note that under the broad police powers conferred by the twenty-first amendment, the state has enacted numerous provisions similarly creating exceptions to liquor regulations based on specified dates. *See, e.g.,* secs. 176.05(1a) (am); 176.05(9m)(b); 176.05(21)(h); and 176.08, Stats.

Petitioner contends that section 90–25.1(3) denies equal protection of law because it results in an irrational and arbitrary classification between retailers not satisfying section 90–25.1(2) who are engaged in the business and hold Class "A" liquor licenses on June 30, 1977,[6] and retailers not satisfying section 90–25.1(2)

[6] Section 90–25.1(3) refers to the "date of passage" of the ordinance. The common council approved the ordinance on June 14, 1977, but it was not published until June 30, 1977, when it became effective.

who would like to obtain a license and enter the business after that date.

We begin our review with a search for any rational basis to support the challenged classification. This classification protects investments already lawfully made by retailers engaged in the business prior to June 30, 1977, a protection retailers seeking to enter the business do not need. Preventing a recently-enacted liquor law from acting too harshly and summarily on those who have lawfully made investments is a legitimate exercise of police power. *See, e.g., Zodrow v. State,* 154 Wis. 551, 556–57, 143 N.W. 693, 695–96 (1913); *Marvin v. Larson,* 153 Wis. 488, 490–91, 140 N.W. 285, 286 (1913). Such a rule encourages improved legislative regulation without unwarranted and unnecessary hardship to those already subject to such regulation.

Petitioner cites factual differences between the means employed in the above cases and the means employed by the common council in section 90–25.1(3) of the challenged ordinance. The classification employed in section (3) is not to be judged by such a comparison but by the fivefold test of *Omernik v. State, supra,* which it meets for the following reasons.

The challenged classification is based upon substantial distinctions: it excepts from section 90–25.1(2) retailers who would otherwise suffer economic loss and hardship because of investments legally made, but does not except retailers who have made no such investments and will suffer no loss because of section 90–25.1(2). It is therefore germane to the purpose of protecting such licensees and the investments they have already lawfully made. The classification, while defined by circumstances existing on June 30, 1977, is not based on them *only,* or even at all. It is based on the legitimate government objective

of protecting from harsh and summary operation of new legislation those who have already lawfully made investments. The law applies equally to each retailer who holds a license on June 30, 1977, and to each retailer who does not. The characteristics of the two classes are sufficiently different to reasonably suggest the propriety of substantially different legislation. One class of retailers has already lawfully made investments which would be harshly and summarily forfeited by subsection (2), while the other class has not. These characteristics reasonably suggest the propriety of legislation protecting only retailers in the first class.

Petitioner has not met its burden of proving beyond a reasonable doubt that no reasonable basis exists to support section 90–25.1(3). The trial court erred in declaring subsection (3) unconstitutional, and that portion of the judgment is reversed.

*By the Court.*—Judgment affirmed in part, reversed in part.

MOSER, P.J. *(Dissenting).* The majority opinion gives Wisconsin's local legislative bodies the green light to restrict competition in the retail liquor business by granting a monopoly to the politically powerful liquor store owners and placing them behind the impenetrable protective shield of the virtually irrebuttable presumption of the constitutionality of an ordinance regulating the sale of liquor. Because I believe the shield raised to defend the ordinance in question protects that which is not worthy of protection, I dissent. Specifically, I assert that section 90–25.1(2) of the Milwaukee City Code of Ordinances, requiring a holder of a Class "A" liquor license to receive at least one-half of its income for the premises from liquor sales, creates an irrational and

arbitrary classification and is therefore both an unreasonable and arbitrary exercise of police power and a denial of equal protection of the law.

The sale of liquor falls within the class of business pursuits that is considered intrinsically harmful to the public welfare. This type of business is ordinarily subjected to more stringent requirements than can be applied to more innocuous pursuits.[1] However, conceding this, as well as that in considering classifications courts are obligated to give the law the benefit of the doubt and the burden of proving the unconstitutionality of the law beyond a reasonable doubt is upon the challenger,[2] the question still remains whether the ordinance involved is so unreasonable and arbitrary as to offend the constitution.

An ordinance regulating business under the police power must be directed toward the protection of a basic interest of society rather than to the advantage of certain individuals or businesses.[3] In *Affiliated Distillers Brands Corp. v. Sills*[4] the court addressed the issue of the constitutionality of a statute that prohibited any manufacturer or wholesaler of alcoholic beverages from participating directly or indirectly in the retailing of alcoholic beverages. Before addressing the merits the court recognized that the legislation in question was the product of the self-interest of the state Wine and Spirit Wholesalers Association and, although this fact alone does not render the legislation invalid, "[i]t does seem to be a matter of common sense to weigh more critically a legislative result produced by a small, selfish and pow-

---

[1] *See Moedern v. McGinnis*, 70 Wis.2d 1056, 1068–70, 236 N.W.2d 240, 246 (1975); 7 E. McQuillin, The Law of Municipal Corporations, (hereafter "McQuillin") §24.325 (3d ed. 1968 Rev. Vol.).

[2] *McGinnis, supra* note 1, at 1068, 236 N.W.2d at 246; *City of Milwaukee v. Piscuine*, 18 Wis.2d 599, 609, 119 N.W.2d 442, 447 (1963).

[3] *See* 7 McQuillin §24.323.

[4] 106 N.J. Super. 458, 256 A.2d 92 (1969).

erful group than a statute resulting from a broad public demand."[5]

In *Affiliated Distillers,* the court noted that:

[the] alcoholic beverage industry is in private hands. It is basic with us that, though subject to controls, it be competitive, not monopolistic. Competition *per se* is not an evil. Though there may be too many bars for the reasonable needs of a given community, the essence of the evil there is the excessive number, and for proper correction there should be a reduction to a point where reasonable competition will be restored. We have no excessive competition at the wholesaler-retailer level. The numbers already mentioned and the heavy concentration of the business in the hands of a few licensees show that. *There is no public good in sheltering a small group of licensees from the competition which our system dictates they should face.*[6] [Emphasis added.]

I agree with the posture taken by the *Affiliated Distillers* court.

Section 90–25.1(2) does not attempt to limit the number of licenses which can be issued in an effort to control the amount of alcoholic beverages sold in Milwaukee. Nor does it altogether prohibit the sale of alcohol in certain areas of the city to protect those areas from the presence of alcohol. Such nondiscriminatory legislation might be permissible as rationally related to the public welfare. Rather, the ordinance simply prohibits an entire class of businesses from selling alcoholic beverages.

In *Eskind v. City of Vero Beach,*[7] the Florida Supreme Court struck down an ordinance prohibiting the display of outdoor rate signs by operators of lodging accommodations. The ordinance was supposedly designed to protect the attractive appearance of the area, but had the

---

[5] *Id.* 256 A.2d at 99.

[6] *Id.* 256 A.2d at 105.

[7] 159 So.2d 209 (Fla. 1963).

curiously coincidental effect of preventing smaller, cheaper hotels (whose appeal is low rates) from competing with larger, more expensive hotels for tourist business. The court found that there was no rational reason to prohibit motel signs advertising rates but permitting other kinds of ads.

The employment of the police power will not be upheld when its exercise imposes an unreasonable restriction on private business on the pretense of promoting the community interest.

. . . [T]he subject ordinance is nothing less than an attempted exercise of the police power to restrict competition between favored and unfavored segments of the same business activity.[8]

The validity of the ordinance in question here, both from a police power and equal protection standpoint, rests on the rationality of the classification: those businesses whose liquor sales amount to one-half of its income for the premises; and, those businesses whose liquor sales amount to less than one-half of its income for the premises. Whether one views this as a "rational" distinction in terms of the general welfare depends upon one's acceptance of the magical premise that those who make more than one-half of their income from liquor sales are more likely to comply with liquor laws than those who make less than one-half of their income from liquor sales. This premise is entirely without support, but by accepting it without question, the majority is able to uphold an ordinance obviously designed to protect the liquor store owner from competition from grocery stores. Under this theory, a similar ordinance might be passed to protect bakeries and butcher shops, if the necessary political influence exists. Is a butcher shop owner more likely to comply with laws regulating the sale of fresh meat than a grocery store owner? Grocery

---

[8] *Id.* at 212.

stores do not have sufficient interest in any one item sold to overcome the presumption under this theory that they are less likely to comply with laws regulating the sale of various items than certain specialty shops.

In my view section 90–25.1(2) is a legislative restriction of competition without justification. It makes a distinction between grocery stores and liquor stores without any supportable rational basis in terms of the general welfare. I believe that the record shows beyond a reasonable doubt that the ordinance is unconstitutional.

† Petition to review granted.