STATE EX REL. MARTIN, Attorney General, Appellant, vs. BARRETT, Respondent.

*March 14—April 29, 1946.*

622

For the appellant there were briefs by the *Attorney General, James Ward Rector,* deputy attorney general, *W. E. Torkelson,* assistant attorney general, and *J. Norman Basten,* district attorney of Brown county, and oral argument by *Mr. Rector.*

*G. F. Clifford* of Green Bay, for the respondent.

A brief was filed by *Paul E. Jorgensen* of Racine, attorney for the Tavern League of Wisconsin, Inc., as *amicus curiæ.*

A brief was also filed by *Clarence Simon,* district attorney of Taylor county, as *amicus curiæ.*

BARLOW, J. The issue in dispute between the parties is whether retail "Class B" intoxicating liquor licenses issued to clubs as defined in sec. 176.01 (8), Stats., are to be computed in determining the number of retail "Class B" liquor licenses which may be issued by towns, cities, and villages under sec. 176.05 (21).

Nine actions were commenced against nine separate defendants, including Homer Barrett, this defendant, by the state of Wisconsin on the relation of John E. Martin, attorney general, to enjoin the sale of intoxicating liquor by the defendant named in each separate complaint. By stipulation the cases were tried together in the circuit court, and were briefed and argued together in this court. Separate judgments were entered and separate appeals taken.

At the time of the passage of sub. (21) of sec. 176.05, Stats., one hundred thirty-three retail "Class B" intoxicating liquor licenses were in force in the city of Green Bay, all of which were held by commercial taverns. At that time the Benevolent and Protective Order of Elks, American Legion, Fraternal

Order of Eagles, Loyal Order of the Moose, and Veterans of Foreign Wars had the qualifications prescribed in sec. 176.01 (8), for a club license. None of the clubs was licensed at that time, and with the exception of the Elks none thereafter obtained a "Class B" intoxicating liquor license prior to July 1, 1945.

On June 5 and 19, 1945, the common council of the city of Green Bay acted upon and granted one hundred twenty-eight retail "Class B" intoxicating liquor licenses. Of these, one hundred twenty-three were issued to what may be called "commercial taverns," and five were issued to the clubs above referred to. Thus the city at that time had authority to grant five additional licenses. June 28, 1945, nine additional licenses were simultaneously granted by the city council of the city of Green Bay to commercial tavern owners, being the nine persons sought to be enjoined from selling intoxicating liquors. All nine licenses are void if the total number granted by the city exceeds the statutory limitation. Where several licenses are granted by one action with the result that it is impossible to determine which was granted first, all are void if the action results in the issuance of licenses in excess of the quota permitted by law. *State ex rel. Owen v. Reisen* (1917), 165 Wis. 258, 161 N. W. 747.

Sec. 176.05 (1), Stats., authorizes each town board, village board, and common council to grant retail licenses under conditions and restrictions of ch. 176, Stats., to such persons entitled to license under said chapter as they deem proper to keep places within their respective towns, villages, or cities for the sale of intoxicating liquors.

Sec. 176.05 (2), Stats., provides that a retail "Class B" intoxicating liquor license shall permit its holder to sell, deal, and traffic in intoxicating liquors to be consumed by glass only on the premises so licensed and not in the original package or container, making additional provision for the sale of wine in the original package to be consumed off the premises, and other provisions not relevant here.

Sec. 176.01 (8), Stats., defines a club in the following language:

" 'Club' shall mean an organization, whether incorporated or not, which is the owner, lessee, or occupant of a building used exclusively for club purposes, and which is operated solely for a recreational, fraternal, social, patriotic, political, benevolent, or athletic purpose but not for pecuniary gain; except that where such club is located in an office or business building it may be licensed as such provided it otherwise qualifies as a 'club' within the meaning of this subsection. The trafficking in intoxicating liquors shall be incidental only and shall not be the object of its existence or operation. A club making application for a license shall have occupied the premises upon which it is then located for a period of six months prior to the date of filing such application."

Sec. 176.05 (21), Stats., was created by ch. 397, Laws of 1939, limiting the number of retail "Class B" intoxicating liquor licenses which may be issued by the governing body of any town, village, or city, and is as follows:

*"Retail 'Class B' liquor licenses limited in number.* (a) No governing body of any town, village or city shall issue more than one retail 'Class B' liquor license for each five hundred inhabitants or fraction thereof, except that if a greater number of such licenses have been granted, issued, or in force, in such town, village or city, at the time of the taking effect of this subsection, than would be permissible under said limitation, such town board, village board or common council may grant and issue such licenses equal in number to those granted, issued, and in force on the taking effect of this subsection, but no such town or village board, or common council shall grant and issue any additional retail 'Class B' license above the number in force upon the taking effect of this subsection until the number of such licenses shall correspond to the limitation provided herein. Inmates of charitable and penal institutions shall not be considered as inhabitants of cities or villages for the purposes of this subsection."

Sec. 176.05 (4), Stats., provides the minimum and maximum limits ($50 to $500) within which towns, cities, or vil-

lages may fix fees for retail "Class B" intoxicating liquor licenses; provided, however, that such licenses may be issued to *bona fide* clubs and lodges incorporated or chartered in the state of Wisconsin for at least six years for such smaller fee as the governing body of the town, city, or village may determine.

Pursuant to the provisions of this subsection, the city council of the city of Green Bay passed ordinance sec. 11.01 (2) (d), fixing the license fee for clubs at $100 for retail "Class B" fermented malt beverage licenses and $25 for retail "Class B" intoxicating liquor licenses, the ordinance reciting: "It is understood that said clubs and lodges are of a private nature open only to its members."

The city of Green Bay issued what it termed "Combination Class B" licenses, which included the right to sell fermented malt beverages and intoxicating liquors. If the "Class B" liquor licenses issued to the clubs are to be computed in determining the number of retail "Class B" intoxicating liquor licenses issued by the city of Green Bay, as contended by the appellant, the total number issued will be one hundred thirty-seven; and if they are not to be so computed, as contended by respondent, the total number issued will be one hundred thirty-two, which number the city was authorized to issue.

In the exercise of its police power the legislature has plenary authority to prohibit traffic in liquor or restrict it in any reasonable manner. *Zodrow v. State* (1913), 154 Wis. 551, 143 N. W. 693; *Wightman v. Devere* (1873), 33 Wis. 570; *State ex rel. Henshall v. Ludington* (1873), 33 Wis. 107. Under the statute in question the legislature has limited the number of places that can sell, deal, or traffic in intoxicating liquor. The right of the city council to grant and issue licenses is statutory, and without affirmative authority in the statute the action of the city council is void and of no effect. It is argued that the city authorities are vested with authority to issue these li-

censes, which authorizes them to use their discretion as to what constitutes a retail "Class B" liquor license. The statute does permit the city officials to use their discretion in determining whether an applicant is a proper person to be granted a license, but the license which they can grant is fixed by law, and no discretion is left with the council on this question.

Respondent contends that dispensing liquor by a club to club members is not a sale under the statute in question. It is argued that a person has a right to drink liquor in his own home and therefore has a right to drink it in his own club. If the legislature had not provided for licensing clubs, respondent's argument might have some force, but the legislature has provided for licensing clubs, thereby requiring a club to have a license if it is to have the right to dispense intoxicating liquors. It is argued that a special kind of license for clubs is authorized by law and the city ordinance of the city of Green Bay. This is not correct. Special classes of applicants are eligible to obtain the same kind of license.

Considerable stress is placed on the fact that clubs authorized to be licensed must be organized for purposes other than pecuniary gain. It is said that the words "sell, deal or traffic in" in the licensing statute necessarily mean to do so for profit, which the club cannot do and be within the statute authorizing it to be licensed. We cannot agree with this position. While the statute provides that a club which is organized for pecuniary profit only cannot obtain a license as such, it may be granted a license where the sale of intoxicating liquor is incidental only and not the object of its existence or operation. Its main purpose must be one of the purposes set forth in the statute in order to so qualify. No one would contend that a club organized for any of the purposes specified serves meals at cost, or sells liquor to its members at cost, as the cost would be a variable from day to day, depending on the volume. The club expects to make some profit from these activities, but this does not mean that the club is operated for

pecuniary profit as the profits made, if any, are used to carry out the general purpose for which the club is organized, which must be one of the purposes designated in the statute. If it does qualify under the statute for a club license, the city council may grant or refuse a license, and if it does not so qualify, it cannot obtain a license at all. If it is eligible to receive a license it can only be granted the same licenses as other eligible licensees can obtain. The legislature did not prescribe special types of licenses for clubs with special provisions governing them. If the legislature had intended that licenses granted to clubs should not be included in determining the total number of licenses that could be granted, it would have been easy to so state when the limitation was established. The legislature refused to so amend the law since the passage of the license-limitation provision. The state liquor law is an enactment of state-wide concern, designed to obtain uniform regulation. Sec. 176.44, Stats. *State ex rel. Torres v. Krawczak* (1935), 217 Wis. 593, 259 N. W. 607.

The language of sec. 176.05 (21), Stats., is clear and unambiguous, and we have no difficulty in determining the intention of the legislature in enacting it. The purpose of the statute was to limit the number of licenses of the type in question to one for every five hundred persons where the licenses in effect at the time of passage of the act did not exceed that number, and to limit it to the number then in effect in communities at the time of the passage of the law where the licenses in effect exceed one for every five hundred of population. Thus the maximum number of licenses that can be issued in any community was established by the legislature.

Respondent argues that it was not the intention of the legislature to injure or destroy going business, and that the obvious intention was to preserve the rights and property investment of those lawfully engaged in the business at the time of the passage of the law. It was stipulated on the trial that some of the parties have large investments in property used

solely for this business, and that the location of the premises and type of construction are particularly adapted to the tavern business, and their failure to obtain a license will cause them to suffer a material loss. This is a matter to be taken into consideration by the licensing authorities in granting licenses. Under the law as passed, the licensing authorities, upon application, could have granted licenses to every licensee who had a license when the law was passed, either at the place he was operating at the time or in any other location in the city. Or they could have granted licenses to one hundred thirty-three new licensees and refused licenses to every person who had a license when the law was passed. If the authorities had granted licenses to other individuals, and refused them to the respondents in this case and companion cases, the result would be the same.

It is argued this statute follows sec. 1565d, Stats. 1915, known as the "Baker" law, and the decisions of this court under that law should be followed in interpreting this law. The Baker law was entirely different from the present law. While it did limit the number of licenses to one for every five hundred of population, it provided that premises licensed on a certain date had a continuing right to be licensed when the number exceeded the limitation fixed by statute, but no new licenses could be issued for new places in excess of the limitation unless the premises then licensed were destroyed or were otherwise unavailable for reasons provided in the statute, in which instance a license could be issued for other premises. Under the Baker law the right to a license attached to the property and continued as such, where the number of licenses exceeded one to every five hundred of population. The law under consideration recognizes no license right in any property and must be construed as written.

Some reference is made to the constitutionality of the statute if construed as contended for by appellant. We find no merit to this contention, as the regulation of the sale of in-

toxicating liquors does not come within the equality provisions of the United States constitution. *Vieau v. Common Council* (1940), 235 Wis. 122, 292 N. W. 297; *Weinberg v. Kluchesky* (1940), 236 Wis. 99, 294 N. W. 530.

The question is raised whether the attorney general is authorized to institute this proceeding. Sec. 280.02, Stats., clearly answers this question in the affirmative, as held in *State ex rel. Attorney General v. Stoughton Club* (1916), 163 Wis. 362, 158 N. W. 93; *State ex rel. Owen v. Reisen* (1917), 165 Wis. 258, 161 N. W. 747; *State ex rel. Attorney General v. Thekan* (1924), 184 Wis. 42, 198 N. W. 729.

Respondent moves to suppress that portion of appellant's brief containing copies of correspondence and files in the office of the state treasurer and copies of the legislative record from the secretary of state's office relative to bills which were acted on by the legislature. These records were not presented to the trial judge, as is shown by the affidavit of Hon. HENRY GRAASS, the trial judge. They are records of which this court takes judicial notice, and could have been used before the trial court if either party had desired to do so. *Hansen v. Industrial Comm.* (1943) 242 Wis. 293, 7 N. W. (2d) 881; *Wisconsin Power & Light Co. v. Beloit* (1934), 215 Wis. 439, 254 N. W. 119. The motion is denied.

We recognize that the result of this case can cause a very serious loss to defendant and others in a like position, but it is one of the hazards of business of any kind, which cannot be the determining factor in construing a law which has been passed by the legislature. No doubt all of this was fully considered in arriving at what it considered to be in the interest of the public as a whole.

The trial judge reasoned that licenses issued to country clubs by the state treasurer under the provisions of sec. 176.05 (4a), Stats., are not computed by enforcement authorities in determining the permissible number. However, this is of no significance. Sec. 176.05 (21) applies only to licenses issued

by local units of government. It does not apply to licenses issued by the state treasurer.

It is considered that "Class B" retail liquor licenses issued to clubs as defined in sec. 176.01 (8), Stats., must be computed in determining the total number of licenses which may be issued under the provisions of sec. 176.05 (21).

*By the Court.*—Judgment reversed, and cause remanded with instructions to enter judgment enjoining defendant from selling, dealing, or trafficking in intoxicating liquor, as demanded in the complaint.

RECTOR, J., took no part.