CITY OF MILWAUKEE, Respondent, v. PISCUINE, Appellant. SAME, Respondent, v. ARTIS, Appellant.*

*November 30, 1962—February 5, 1963.*

---

* Motion for rehearing denied, with $25 costs, on April 2, 1963.

600

601

For the appellants there were briefs by *Walter J. Steininger*, attorney, and *Thomas P. Maroney* and *Clarence P. Nett* of counsel, all of Milwaukee, and oral argument by *Mr. Steininger* and *Mr. Maroney*.

For the respondent there was a brief by *John J. Fleming*, city attorney, and *Maurice L. Markey*, assistant city attorney, and oral argument by *Mr. Markey*.

WILKIE, J. The whole contest on this appeal is on the validity of city of Milwaukee ordinance 90–25. The appellants do not challenge the sufficiency of the evidence supporting the convictions. They make three assertions:

1. The city of Milwaukee does not have the power to enact this ordinance.

2. The ordinance is unconstitutional because it violates the equal rights of women.

3. The ordinance is arbitrary and unreasonable and hence an invalid exercise of the police power.

1. *Does the city of Milwaukee have the power to enact this ordinance?* The broad home-rule powers granted to Milwaukee under sec. 62.11 (5), Stats.,[2] with respect to the police

---

[2] "62.11 (5) *Powers.* Except as elsewhere in the statutes specifically provided, the council shall have the management and control of the city property, finances, highways, navigable waters, and the public service, and shall have power to act for the government and good order of the city, for its commercial benefit, and for the health, safety, and welfare of the public, and may carry out its powers by license, regulation, suppression, borrowing of money,

power are ample authority for the enactment of this ordinance provided (1) it is not directly in conflict with a state statute on the same subject, and (2) it is not unreasonable or arbitrary.

The power of the city of Milwaukee to legislate in this field and to enact this ordinance is supplemented by the provisions of sec. 66.054 (12), (13),[3] and sec. 176.43,[4] Stats., permitting cities to place additional regulations beyond the state statutes in or upon the sale of fermented malt beverages or intoxicating liquors.

If a regulation enacted by a city under the police power is not in conflict with a state statute but merely goes further in its regulation that regulation is not invalid.

The case of *Fox v. Racine* (1937), 225 Wis. 542, 275 N. W. 513, discussed whether a city ordinance which completely prohibited an endurance test (walkathon) was in conflict with sec. 352.48 (1), Stats. 1935, which prohibited such endurance tests unless certain conditions were met. This section, the lower court held, superseded the city ordinance and the ordinance was therefore null and void. The supreme court reversed, holding, at page 546:

tax levy, appropriation, fine, imprisonment, confiscation, and other necessary or convenient means. The powers hereby conferred shall be in addition to all other grants, and shall be limited only by express language."

[3] "66.054 (12) *Local Enforcement.* The common council of any city, the board of trustees of any village, and the town board of any town may adopt any reasonable rule or regulation for the enforcement of this section not in conflict with the provisions of any statute."

"66.054 (13) *Municipal Regulations.* Nothing in this section shall be construed as prohibiting or restricting any city, village or town ordinances from placing additional regulations in or upon the sale of fermented malt beverages, not in conflict with the terms and provisions of this section . . . ."

[4] "176.43 MUNICIPAL AND STATE REGULATIONS; PENALTIES. (1) Any city, village, or town may by ordinance prescribe additional regulations in or upon the sale of intoxicating liquor, not in conflict with the provisions of this chapter. . . ."

"The statute, as well as the ordinance, in the case at bar, is prohibitory, and the difference between them is only that the ordinance goes farther in its prohibition,—but not counter to the prohibition under the statute. The city does not attempt to authorize by this ordinance what the legislature has forbidden; nor does it forbid what the legislature has expressly licensed, authorized, or required. Under those circumstances there is nothing contradictory between the provisions of the statute and of the ordinance because of which they cannot coexist and be effective. Unless legislative provisions are contradictory in the sense that they cannot coexist, they are not to be deemed inconsistent because of mere lack of uniformity in detail. *Bodkin v. State* (Neb.), 272 N. W. 547; *City of Mobile v. Collins,* 24 Ala. App. 41, 130 So. 369. Consequently, there is no conflict or inconsistency between the statute and the ordinance in question because of which the latter has been superseded by the statute, and, therefore, rendered invalid and ineffective. It follows that the court erred in overruling the demurrer."

The appellants contend that the ordinance is in direct conflict with the provisions of "the equal rights for women" statute, sec. 6.015, Stats.[5] Their basic contention is that, since the ordinance singles out female entertainers or employees and does not contain any restrictive provisions affecting male entertainers or employees, it is in violation of sec. 6.015 and of the equal-protection provisions of both

[5] "6.015 WOMEN TO HAVE EQUAL RIGHTS. (1) Women shall have the same rights and privileges under the law as men in the exercise of suffrage, freedom of contract, choice of residence for voting purposes, jury service, holding office, holding and conveying property, care and custody of children, and in all other respects. The various courts, executive and administrative officers shall construe the statutes where the masculine gender is used to include the feminine gender unless such construction will deny to females the special protection and privileges which they now enjoy for the general welfare. The courts, executive and administrative officers shall make all necessary rules and provisions to carry out the intent and purpose of this statute."

the state and federal constitutions.[6] (Issue discussed under 2 below.)

Appellants also contend that the ordinance is unreasonable and arbitrary and hence an invalid exercise of the police power. (Issue discussed under 3 below.)

*2. Does the ordinance violate the equal rights for women as provided under sec. 6.015, Stats., or the equal-protection provisions of the state of Wisconsin and United States constitutions?* As to sec. 6.015 we held in *Nickel v. Hardware Mut. Casualty Co.* (1955), 269 Wis. 647, 70 N. W. (2d) 205, at page 650:

"It has been said by this court that its only purpose was to remove those disabilities which a woman incurred upon her marriage at the common law and to restore to her the rights which she enjoyed as a *feme sole.*"

No rights of women under sec. 6.015, Stats., have been violated by the ordinance.[7]

On the contended violation of the constitutional guaranty of equal protection, a leading federal case is *Goesaert v. Cleary* (1948), 335 U. S. 464, 69 Sup. Ct. 198, 93 L. Ed.

[6] Art. I, Wis. Const. "EQUALITY; INHERENT RIGHTS. *Section 1.* All men are born equally free and independent, and have certain inherent rights; among these are life, liberty, and the pursuit of happiness; to secure these rights, governments are instituted among men, deriving their just powers from the consent of the governed."

Fourteenth amendment, U. S. Const. "*Section 1.* All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

[7] Cases involving this section hold that women have equal rights with men to contract; to enter into partnerships; to sue in their own names; to convey property in their own names; etc.

163. In that case the United States supreme court dismissed an argument similar to the appellants' contention that the ordinance in the case at bar is unconstitutional. A Michigan statute was involved which provided that no female may be a licensed bartender unless she be the "wife or daughter of the male owner" of a licensed liquor establishment. The court held that the statute involved was constitutional, stating, at page 465:

"The Fourteenth amendment did not tear history up by the roots, and the regulation of the liquor traffic is one of the oldest and most untrammeled of legislative powers. Michigan could, beyond question, forbid all women from working behind a bar. This is so despite the vast changes in the social and legal position of women. The fact that women may now have achieved the virtues that men have long claimed as their prerogatives and now indulge in vices that men have long practiced, does not preclude the states from drawing a sharp line between the sexes, certainly in such matters as the regulation of the liquor traffic."

The court further stated, at pages 466, 467:

"While Michigan may deny to all women opportunities for bartending, Michigan cannot play favorites among women without rhyme or reason. The constitution in enjoining the equal protection of the laws upon states precludes irrational discrimination as between persons or groups of persons in the incidence of a law. . . . Since bartending by women may, in the allowable legislative judgment, give rise to moral and social problems against which it may devise preventive measures, the legislature need not go to the full length of prohibition if it believes that as to a defined group of females other factors are operating which either eliminate or reduce the moral and social problems otherwise calling for prohibition.

". . . Suffice it to say that 'A statute is not invalid under the constitution because it might have gone farther than it did, or because it may not succeed in bringing about the result that it tends to produce.' *Roschen v. Ward*, 279 U. S. 337, 339."

*Anderson v. St. Paul* (1948), 226 Minn. 186, 32 N. W. (2d) 538, dealt with an ordinance of the city of St. Paul which was similar to the Michigan statute as presented in the *Goesaert Case, supra.* The Minnesota supreme court came to the same result as did the United States supreme court in the *Goesaert Case.* The Minnesota court stated (p. 191) :

"Because prohibiting one from engaging in the business of selling intoxicating liquor does not constitute a deprivation of either liberty or property, state and local regulations prohibiting the employment of women in places where intoxicating liquor is sold for consumption on the premises do not deprive women of liberty or property."

On the equal-protection-of-the-laws question, the court said, at page 195 :

"A distinction for purposes of legislative classification based on sex does not deny equal protection where it bears some reasonable relation to the object sought to be accomplished by the legislation."

Although it is true that in both the *Goesaert Case, supra,* and the *Anderson Case, supra,* the legislation prohibited female employment as bartenders in taverns, the Milwaukee ordinance has nothing to do with prohibiting employment but regulates the conduct of female employees in taverns. Both of these cases hold that legislation prohibiting such female employment is not contrary to the constitutional guaranty of equal protection. It follows that mere regulation of the conduct of female employees as in the Milwaukee ordinance does not violate that guaranty.

Wisconsin has unequivocally stated that legislative power is most extensive in the regulation of the liquor-industry traffic.[8] This court in *Vieau v. Common Council* (1940), 235 Wis. 122, 292 N. W. 297, held, at page 124: "The

[8] *Weinberg v. Kluchesky* (1940), 236 Wis. 99, 294 N. W. 530; *State v. Coubal* (1946), 248 Wis. 247, 21 N. W. (2d) 381; *State ex rel. Martin v. Barrett* (1946), 248 Wis. 621, 22 N. W. (2d) 663.

regulation of the sale of intoxicating liquors does not come within the equality provisions of the United States constitution."

The appellants rely on *Matter of Maguire* (1881), 57 Cal. 604, 40 Am. Rep. 125. In that case, the California court held that Miss Maguire could work in a tavern and that the ordinance prohibiting her from so doing was unconstitutional. *Anderson v. St. Paul, supra,* discusses that case and states, at page 192:

"The authorities with but a single exception, *Matter of Maguire,* 57 Cal. 604, 40 Am. Rep. 125, hold that prohibiting the employment of women as bartenders, waitresses, or otherwise in places where intoxicating liquor is sold to be drunk on the premises does not abridge any privilege or immunity of women as citizens of the United States in violation of the Fourteenth amendment or deny to them the equal protection of the laws in violation of the equal-protection clause thereof."

We conclude that this ordinance does not violate the equal-protection provisions of either Art. I of the Wisconsin constitution or the Fourteenth amendment of the United States constitution.

3. *Is the ordinance an unreasonable and arbitrary exercise of the police power?* An ordinance will be deemed proper unless illegality in the exercise of the police power is clearly shown. *Highway 100 Auto Wreckers v. West Allis* (1959), 6 Wis. (2d) 637, 96 N. W. (2d) 85. In this case our court further held, at pages 643, 646:

"The police power of the state, exercised by municipalities under authority of the legislature extends to the public safety, health, morals, and general welfare." (p. 643.)

"It is an elementary rule of construction that an ordinance will be held constitutional unless the contrary is shown beyond a reasonable doubt and the ordinance is entitled to every presumption in favor of its validity." (p. 646.)

In *Boden v. Milwaukee* (1959), 8 Wis. (2d) 318, 99 N. W. (2d) 156, we further stated the rule, at page 325, as follows:

"The police power of a municipal corporation is not absolute but always is subject to the test of reasonableness. However, except in clear cases of oppressiveness or unreasonableness, it is not within the province of the courts to interfere with the exercise of such police power. This is because the legislative bodies of municipal corporations are *prima facie* the sole judges of the reasonableness of an ordinance enacted under their police power, and every intendment is to be made in favor of the reasonableness of such ordinance. *Highway 100 Auto Wreckers v. West Allis* (1959), 6 Wis. (2d) 637, 646, 96 N. W. (2d) 85, 97 N. W. (2d) 423."

Although the reasonableness of such an ordinance as the one involved in the instant case has not been previously litigated in Wisconsin, other similar, although not identical, ordinances have been tested in foreign jurisdictions.

In *Miami v. Kayfetz* (Fla. 1957), 92 So. (2d) 798, the supreme court of Florida held that three out of four sections of a city of Miami "B girl" ordinance, which provisions restricted female employees or entertainers from mingling or fraternizing with the customers or patrons of a tavern, forbade any solicitation of drinks and further prohibited women from frequenting or loitering in any tavern, cabaret, or nightclub for the purposes of soliciting drinks, were a reasonable exercise of the city's police powers. The court held, at page 801: ". . . unless its unreasonable character appears on its face" the ordinance will be presumed to be reasonable. It further held, at page 801:

". . . the city of Miami, under its police power, has the right to enact reasonable regulations concerning the sale of alcoholic beverages as well as other acts in the conduct of such business which do not directly pertain to the sale thereof. . . .

"In considering whether or not the ordinance now before us is reasonable, the test is not whether we think it a wise measure or the best means of approaching a problem, but rather whether it has a rational relation to the public health, morals, safety, or general welfare and is reasonably designed to correct a condition adversely affecting the public good."

The fourth section of the ordinance was held by the court to be unreasonable and a violation of the equal-protection provisions of the constitutions of both the state of Florida and the United States. That provision prohibited the sale of a drink to any employee (male or female). The court's ruling on this section is stated, at pages 803, 804, as follows:

"Absent the conduct prohibited by the other sections of the amendment to the ordinance, we see no more connection between the public welfare, safety, and morals, and the consumption, in itself, of alcoholic beverages by the employees and entertainers, than between the public welfare, safety, and morals, and the consumption of such beverages on the licensee's premises by his patrons.

"As we understand the purposes of the amendment, it is not to prohibit drinking by the employees and entertainers for this is not the evil complained of. Rather it appears to us that the evil sought to be eliminated is the mingling and fraternizing by the female employees and entertainers with the patrons, the solicitation of alcoholic beverages, the frequenting and loitering for the purpose of such solicitation, the immoral acts which grow out of such contacts, and the perpetration of fraud on the patrons of such places.

"We are forced to conclude that section 48 of the amendment to the ordinance is unreasonable and therefore invalid.

"We also find this ordinance to be violative of the equal-protection provisions of Fla. Const. Declaration of Rights Section 1, and U. S. Const. Amend. XIV, Sec. 1, in that it prohibits the sale of such beverages by the plaintiff to his employees, but allows other licensees to sell such beverages to such employees."

In a later Florida case, *Miami v. Jiminez* (Fla. 1961), 130 So. (2d) 109, the court had before it the question of

whether or not an ordinance prohibiting female employees in a drinking establishment from accepting drinks paid for by the customers was reasonable. The court there stated, at page 110:

"The municipal ability to legislate, that is to limit individual rights is directly proportional to the strength of the danger to the public. This court will take judicial notice of the fact that the frequency of immoral acts in connection with the operation of drinking establishments is such that they often constitute a grave threat to the public welfare and municipal life. It follows that the regulation of the contact between female employees and the public in drinking establishments is a proper matter of municipal legislation. It requires very little thought to recognize that this is a difficult field for the exercise of police power. Moreover, those who operate such establishments do so under a license granted as a privilege by the state. If the rights of these licensees and their employees are sometimes necessarily abridged in order to properly regulate these licensees, it is an unfortunate but necessary adjunct to the carrying out of a proper municipal police function. Cf. *Rodriquez v. Jones* (Fla. 1953), 64 So. (2d) 278, 279.

"The question is not whether one can imagine a situation where the subject ordinance would be an unnecessary restriction upon the rights of a female employee in a liquor establishment, but the question is whether the restriction is shown to be unrelated to the public danger inherent in the operation of this type of business. See *In re Tahiti Bar, Inc.*, 395 Pa. 355, 150 Atl. (2d) 112."

Another case, *People v. King* (1952), 115 Cal. App (2d) Supp. 875, 877, 252 Pac. (2d) 78, held that a San Diego, California, ordinance which prohibited any female employee in any on-sale-liquor establishment from drinking, dancing, or mingling with any patron of such establishment, was constitutional and reasonable. The court there stated, at page 79:

"The obvious purpose of the ordinance under consideration is to prevent female employees from improprieties and immoral acts likely to result from intimate familiarity of the sexes in liquor establishments. It is plain enough that drinking with patrons or dancing with patrons would tend to encourage improprieties and there are, no doubt, many intimate acts of association too numerous to specifically prohibit by statute which would tend to encourage improprieties by female employees and patrons."

It may appear to some that the common council of the city of Milwaukee, which city is world-famous for gemütlichkeit, was not true to this tradition in enacting an ordinance that makes it out of bounds for a female entertainer or other female employee of a liquor emporium just to mosey up to the bar located on the premises. However, the ordinance is decidedly unlike the section of the city of Miami ordinance ruled invalid in *Miami v. Kayfetz, supra;* it is similar though not identical to the other valid sections of that ordinance and other legislation deemed reasonable and valid in the *Anderson, Jiminez, King,* and *Goesaert Cases, supra.* The regulation of conduct of female employees in liquor establishments is a necessary and reasonable exercise of the police power. Although standing or sitting at a bar may not by itself be conduct which is against morals and the public welfare, this is not the test. Ever since Eve, mankind has recognized that one thing may lead to another and if the city of Milwaukee common council chose to enact these restrictions as part of a program (along with ordinance 90–24 prohibiting solicitation of drinks by female employees) to reduce the fraternizing by female employees with patrons of these liquor establishments, we must hold that this ordinance is a reasonable exercise of the police power and that the regulations are directly related to preserving morals and the public welfare.

No constitutional guaranties of female employees have been breached. The ordinance is valid.

At the time of Miss Artis' violation of the ordinance, the defendant licensee, Charles Piscuine, was not on the premises and he claims he should not be held liable for her acts. We have held many times that a licensee is responsible for all actions that take place on his licensed premises whether he is present or not.[9] In the liquor business that is one of the hazards that a licensee assumes when he is granted a license.

Both convictions must stand.

*By the Court.*—Judgments affirmed.

DIETERICH, J. (*dissenting*). I disagree with the opinion of the majority of this court in two respects. First, I do not believe that the conduct by Miss Artis came within the prescribed prohibitions of the ordinance. Secondly, I believe that if the ordinance in question is broadly construed, the ordinance is unconstitutional.

The ordinance in question prohibits, among other things, a female employee from accepting a drink at the bar of her employer. For the purposes for which the statute was promulgated "employee" should not be construed to include an employee who is off duty, even though she is on the premises of her employer. When defendant Artis ceased to entertain for the evening, her employment relationship was terminated until she again undertook to entertain the bar patrons. Therefore, at the time she had a drink with the gentlemen in the Lamp Post Bar she occupied the same position with respect to the provisions of the Milwaukee ordinance in question as any other female patron.

Any other construction of Milwaukee ordinance 90–25 would lead to an absurd result. The result reached by the majority of this court imposes a penalty on defendant Artis

[9] *State v. Grams* (1942), 241 Wis. 493, 6 N. W. (2d) 191; *State v. Dried Milk Products Co-operative* (1962), 16 Wis. (2d) 357, 114 N. W. (2d) 412; *State ex rel. Conlin v. Wausau* (1908), 137 Wis. 311, 118 N. W. 810.

for conduct in the Lamp Post Bar which conduct by her would be deemed lawful in any other bar in the city of Milwaukee. If she had gone to the bar nearest the Lamp Post Bar after her act and had a drink with a gentleman, there would have been no violation. What would be the result if defendant Artis had left the premises for ten seconds and returned—could she then drink with a male patron or must she delay her return for ten minutes, an hour, or some other undetermined time? When does defendant Artis cease to be an employee and become a patron? The only reasonable answer is that when she has ceased performing that service for which she was employed, in the instant case playing the piano as an entertainer, then her status as an employee ceased for the purpose of the ordinance. In my opinion the enforcement of Milwaukee ordinance 90–25 as construed by the majority members of the court will be arbitrary and capricious.

Secondly, I believe the ordinance here in question, as construed by the majority of this court, is unconstitutional. I cannot take a light view of any law which is broader than necessary to accomplish those purposes for which the law was enacted. It is unquestionably the prerogative of the city of Milwaukee to create ordinances for the purpose of regulating the sale of liquor. When considering the constitutionality of this ordinance, however, it is vitally important to recognize a distinction between the regulation of liquor traffic and the regulation and restriction of the individual. Penalizing the owner of a bar for engaging in prohibitive conduct is a valid exercise of police power; penalizing the entertainer individually is an attempt at regulating an individual's conduct, not liquor traffic. When the ordinance in question is construed, so that activities lawful on the premises of one establishment are unlawful on another, that ordinance becomes an unreasonable, arbitrary exercise of police power. It should be self-evident that overregulation of our society

through zealous exercise of the police power is inconsistent with the traditions of a free society. The gradual encroachment of individual liberties through the myriad of laws being promulgated on all levels of government results in the restriction and trammeling of our rights as surely as would the abolishment of the Bill of Rights. Only the courts stand between the individual and the great abundance of legislation threatening to overwhelm his rights to freedom in our democratic system of government. For that reason, I believe the court should become increasingly vigilant when determining questions involving matters of due process, substantive or procedural. The Milwaukee ordinance in question, as construed by this court, is not reasonably related to the ends which it seeks to accomplish; nor reasonable because it unduly restricts the activities of the individual in order to accomplish the results for which it was enacted.