MOEDERN and another, Appellants, v. McGINNIS and others, Respondents.

*No. 522 (1974). Argued October 29, 1975.—*
*Decided December 19, 1975.*
(Also reported in 236 N. W. 2d 240.)

For the appellants there were briefs by *Ray T. McCann*, attorney, and *John T. McCann* of counsel, all of Milwaukee, and oral argument by *John T. McCann*.

For the respondents there was a joint brief by *Fritschler, Pellino & Associates* of Madison for respondents McGinnis, Albright, Stone and Moederndorfer and by *Korth, Rodd, Sommer & Mouw, S. C.* of Rhinelander for respondents Weber and Vranik, and oral argument by *John Fritschler*.

The constitutional question was argued by *James McKay*, assistant attorney general, with a brief by *Bronson C. La Follette*, attorney general, and *Stephen L. Morgan*, assistant attorney general.

CONNOR T. HANSEN, J. Ch. 213, sec. 5, Laws of 1971, changed the age of majority from twenty-one years to eighteen years, and thereafter persons eighteen years of age and older could legally consume intoxicating liquor. Persons holding Class "B" fermented malt beverages licenses (sec. 66.054 (8) (c), Stats.) were licensed to sell

fermented malt beverages to persons over eighteen years of age. The number or "quota" of Class "B" retail liquor licenses that a municipality can issue is restricted by sec. 176.05 (21).

The result of this situation apparently brought about the enactment of ch. 48, Laws of 1973, which created sec. 176.05 (21) (h), Stats., and became effective on June 28, 1973.

As we view this case, the principal thrust of the action is a challenge to the constitutionality of sec. 176.05 (21) (h), Stats., which reads in pertinent part, as follows:

"176.05 **Liquor licenses.**

" . . .

"(21) QUOTAS OF 'CLASS B' RETAIL LIQUOR LICENSES.

. . ." . . .

"(h) Notwithstanding this subsection, the governing body of any town, village or city may by a three-fourths vote of all members of the governing body grant a 'Class B' retail intoxicating liquor license to any person who on February 1, 1972, held a valid class 'B' retail license under s. 66.054 or who can demonstrate with a bona fide offer to purchase an intent to purchase premises licensed under that section prior to February 1, 1972, or who on February 1, 1973, held a valid class 'B' retail license under s. 66.054 and who is engaged in preserving historic inns and hotels established during this state's territorial period 1836–1848 or who is engaged in preserving historic homes built during the post-civil war era in Wisconsin (1865–1880), if the application is made before June 30, 1974. Any such license shall not affect the quota of any town, village or city under this subsection, but no other premises may be licensed under this section, except when a license is transferred under sub. (14), until the total number of licenses in the municipality is again within the quota, except in the case of annexations under par. (c). At its option, the governing body may limit the period for which the license is granted to less than one year. No license may be granted under this paragraph:

"1. For 5 years after the first granting under this paragraph to any person other than the licensee under s. 66.054 on February 1, 1972. If the licensee dies, becomes incapacitated because of illness, becomes bankrupt or makes an assignment for the benefit of creditors, a license may be granted to the surviving spouse, administrator, executor, receiver or trustee.

". . .

"3. To any person failing to demonstrate that prior to February 1, 1972, the sales of fermented malt beverages under the license held under s. 66.054 were greater than 50% of either the gross receipts or the net profit of business operations as reported on the operator's 1971 income tax return. The determination that such sales were or were not an essential part of the applicant's business shall be made by the licensing body."

The plaintiff-Moedern is a resident of the town of Little Rice, Oneida county, and holds a Class "B" liquor license, issued pursuant to the provisions of sec. 176.05 (2) (a) and (b), Stats. The plaintiff-Tavern League of Wisconsin, Inc., represents holders of Class "B" liquor licenses throughout the state.

Defendants, Weber, Vranik and McGinnis, comprise the town board of the town of Little Rice. Sec. 176.05 (21) (h), Stats., charges the town board with responsibility of issuing licenses in accordance with the provisions thereof. The action is brought against them in their capacity as members of the town board. The complaint alleges that Weber was the holder of a Class "B" liquor license and that Vranik is the landlord or owner of a Class "B" liquor-licensed establishment in the town of Cassian, Oneida county.

McGinnis was also named as an individual defendant. It is alleged that he was a holder of a sec. 66.054 (8) (c), Stats., fermented malt beverage license and as a member of the town board, voted for the issuance of his own Class "B" liquor license under sec. 176.05 (21) (h).

Defendants-Albright and Stone allegedly obtained Class "B" liquor licenses under the challenged statute. Defendant-Moederndorfer was the owner or operator of the establishment operating under the license issued to Stone.

The defendants argue that the plaintiffs lack standing to bring this action. Sec. 176.05 (21) (h), Stats., attempted to alleviate the purported injurious effects of the lowering of the age of majority upon the holders of Class "B" fermented malt beverage licenses. The statute does this by providing for issuance of a number of Class "B" intoxicating liquor licenses above the quotas set by the remaining provisions of sec. 176.05 (21) to persons who held valid Class "B" fermented malt beverage licenses on February 1, 1972, and could demonstrate on the basis of their 1971 income tax return that prior to February 1, 1972, the sales of fermented malt beverages pursuant to that license were greater than 50 percent of either the gross receipts or the net profit of their business operations. The license must be granted by a three-fourths vote of the members of the governing body of any town, village or city.

The defendants contend that the complaint, even construed in a light most favorable to plaintiffs, alleges no specific discrimination or denial of equal protection to these particular plaintiffs. Assuming that the real harm suffered by plaintiffs is a possible increase in competition, defendants assert that this has neither been alleged nor shown and, even if it had been alleged, there is no right to be free from lawful competition.

Plaintiffs argue that a liquor license is a protectable property right and that this right has been infringed by the economically injurious effect of the quota exception. Moreover, the action of defendant McGinnis in voting for his own license was illegal and illustrative of the discriminatory nature of the provisions of the challenged section.

The trial court found that plaintiffs lacked standing to sue because the legislature apparently intended an increase in competition to Class "B" liquor license holders by making this exception to the quota limitation and that such a legislatively mandated competitive increase could not confer standing on these plaintiffs. Furthermore, the operation of the provisions of the statute actually complained of by plaintiffs results in no direct discrimination or injury relating to them, insofar as the complaint shows or can be construed to show.

In determining whether a party has standing to challenge the constitutionality of a statute, it has often been held that a person does not have standing to challenge a statute on constitutional grounds upon a point not affecting his rights, *Scharping v. Johnson* (1966), 32 Wis. 2d 383, 395, 145 N. W. 2d 691, nor to challenge the unequal protection afforded to members of a class unless he is a member of that class. *Dane County v. McManus* (1972), 55 Wis. 2d 413, 426, 198 N. W. 2d 667.

In *Sierra Club v. Morton* (1972), 405 U. S. 727, 732, 92 Sup. Ct. 1361, 31 L. Ed. 2d 636, it was stated:

". . . Where the party does not rely on any specific statute authorizing invocation of the judicial process, the question of standing depends upon whether the party has alleged such a 'personal stake in the outcome of the controversy,' *Baker v. Carr,* 369 U. S. 186, 204 [82 Sup. Ct. 691, 703, 7 L. Ed. 2d 663], as to ensure that 'the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution.' *Flast v. Cohen,* 392 U. S. 83, 101 [88 Sup. Ct. 1942, 1953, 20 L. Ed. 2d 947]. Where, however, Congress has authorized public officials to perform certain functions according to law, and has provided by statute for judicial review of those actions under certain circumstances, the inquiry as to standing must begin with a determination of whether the statute in question authorizes review at the behest of the plaintiff."

*Flast v. Cohen* (1968), 392 U. S. 83, 88 Sup. Ct. 1942, 20 L. Ed. 2d 947, was a case in which federal taxpayers asserted standing to challenge the constitutionality of certain federal taxing and spending programs. The court pointed out that the gist of the requirements relating to standing, presumably in any prospective litigation, is to assure that the party seeking relief has alleged such a personal stake in the outcome of the controversy as to give rise to that adverseness necessary to sharpen the presentation of issues for illumination of constitutional questions. Whether or not the allegation of personal stake in the outcome is sufficient to confer standing depends on whether there is a "logical nexus between the status asserted and the claim sought to be adjudicated," *Flast, supra,* page 102. The court further stated that the nexus required of the federal taxpayer challengers involved, first, the establishment of a logical link between the status of the party asserting standing and the type of legislative enactment attacked, and secondly, the establishment of a nexus between that status and the precise nature of the constitutional infringement alleged. In the instant case it could be said that there was a logical link between the status of plaintiffs as holders of Class "B" liquor licenses and the subject matter of the challenged statute. However, we cannot conclude that the individual substantive allegations of the complaint show a nexus between that status and the constitutional infringements alleged, since the procedural provisions and classifications challenged do not relate directly to plaintiffs' status as previous Class "B" liquor license holders.

A review of the substantive allegations of the complaint reflect that:

Paragraph 10: Alleges a violation of the Wisconsin Constitution, with no specific provision cited, in that the statute requires a three-fourths vote for issuance of a

license thereunder. Because the township board is composed of only three members, the requirement is actually that a unanimous vote be had. Therefore, defendant McGinnis voted on the application for his own license. Construing this paragraph to mean that plaintiffs allege such provision has resulted in a violation of equal protection or due process, where is the nexus between the precise nature of these constitutional challenges and the status of plaintiffs as Class "B" liquor license holders? Even if such a procedure on its face may not conform to the requirements of due process, it has not affected plaintiffs as to the possession of their licenses. Nor does it deny them equal protection. They already hold licenses and the procedure utilized in the issuance of a new license to another person has not affected their possession of those licenses.

Paragraph 11: Alleges a discriminatory classification in that certain areas which previously permitted the issuance of Class "B" fermented malt beverage licenses for sale of beer to persons eighteen and over are favored over areas where sale was permitted previously only to those over the age of twenty-one. The problem indicated here seems to be that the former areas referred to may have an above-quota number of Class "B" liquor licenses issued as a result of the exception mandated by the statute, while the latter areas would have none. Once again, such classification results in no denial of equal protection or due process to these plaintiffs, who already hold their licenses.

Paragraph 12: Alleges that the basis for the grant of a license is improper and, therefore, discriminatory. The requirements are that an applicant must have applied by June 30, 1974, must have been the holder of a valid Class "B" fermented malt beverage license on February 1, 1972, and must have shown, at the time of application, as evidenced by his 1971 income tax return, that prior to

February 1, 1972, more than 50 percent of the gross receipts or net profit of his business operations were derived from the sale of fermented malt beverages. Any discrimination or denial of equal protection involved in these provisions would seem to relate only to a person who could not make such showing. The plaintiffs already have licenses. They are not required to make any showing to retain those licenses. Moreover, the requirements limit, rather than expand, the number of above-quota licenses which may be issued. Thus, even if plaintiffs could show in some way that the issuance of above-quota licenses is a denial of equal protection to their alleged property interests, the requirements stated above would not be the basis for such claim.

If we were to construe the complaint most liberally, it could be inferentially held that the plaintiffs claim a general economic harm because of increased competition. The complaint does not in fact allege this on its face. If the plaintiffs have a right to limited competition, it was conferred upon them by the legislature. We find no constitutional basis for standing to challenge a legislative increase in competition. Furthermore, in this case, the legislation establishing the classification of those who could apply for nonquota licenses that results in increased competition has no relationship to the injury claimed. The legislature has determined that under certain restrictive standards there should be increased competition. This it had a right to do. Such classification cannot be attacked by these plaintiffs as unconstitutional. Whether someone who was denied a license because he was outside the classification would have standing to challenge the statute is not this case. In this state a liquor license is a privilege and terming it a right is considered to be against public policy. *Marquette Savings & Loan Asso. v. Twin Lakes* (1968), 38 Wis. 2d 310, 315, 156 N. W. 2d 425; *State ex rel. Ruffalo v. Common Council* (1968),

38 Wis. 2d 518, 157 N. W. 2d 568. Such right "inures to the benefit of the licensee as determined by the exercise of the discretionary authority vested in a licensing board," *Marquette Savings & Loan, supra.*

This court considered the rules of standing as they relate to administrative agency decisions in *Wisconsin's Environmental Decade, Inc. v. PSC* (1975), 69 Wis. 2d 1, 230 N. W. 2d 243. This court adopted a two-pronged analysis, conceptually similar to the federal rule, requiring two determinations:

". . .(1) Does the challenged action cause the petitioner injury in fact? and (2) is the interest allegedly injured arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question?"

*Wisconsin's Environmental Decade, Inc. v. PSC, supra,* involved a review of a decision of an administrative agency and found *Data Processing Service v. Camp* (1970), 397 U. S. 150, 90 Sup. Ct. 827, 25 L. Ed. 2d 184, and *Barlow v. Collins* (1970), 397 U. S. 159, 90 Sup. Ct. 832, 25 L. Ed. 2d 192, persuasive authority. Both of these cases involved challenges to federal administrative decisions. The "zone of interest" concept has no meaning in an adversary proceeding challenging the constitutionality of a statute and capable of judicial resolution. Arguably, everyone is within the "zone of interest" protected by the due process and equal protection clauses of the constitution.

The trial court also considered the complaint on its merits and determined that the statute was not unconstitutional. Under the circumstances presented in this case and because of the issues involved, this was an appropriate exercise of judicial discretion.

The plaintiffs have challenged the constitutionality of the statute by instituting an action for declaratory judgment. The attorney general was served with copies

of the pleadings pursuant to sec. 269.56 (11), Stats. He participated in the trial court proceedings but did not respond because neither the attorney general nor the state is a named party in this litigation. On appeal, a brief was filed and oral argument had.

Initially, we again observe the well-established presumption of constitutionality which attaches itself to all legislative acts. *State ex rel. Hammermill Paper Co. v. La Plante* (1973), 58 Wis. 2d 32, 46, 47, 205 N. W. 2d 784. The parameters of such presumption were outlined in that case as follows:

". . . It is not enough that respondent establish doubt as to the act's constitutionality nor is it sufficient that respondent establish the unconstitutionality of the act as a probability. Unconstitutionality of the act must be demonstrated beyond a reasonable doubt. Every presumption must be indulged to sustain the law if at all possible and, wherever doubt exists as to a legislative enactment's constitutionality, it must be resolved in favor of constitutionality. This court has often affirmed the well-established presumption of constitutionality that attaches itself to all legislative acts. . . ."

The attorney general asserts that the arguments under the due process and equal protection guarantees of the constitution advanced by the plaintiffs need not be addressed. As to the determination of the constitutionality of this particular statute, we would agree. This is true because of the state's broad police power over the regulation of liquor traffic and because of the scope of the twenty-first amendment. Any reasonable and rational statute enacted under the police powers with respect to regulation of liquor traffic, is constitutional.

The United States Supreme Court on several occasions has reiterated the fact that the twenty-first amendment gives the states broad powers. *California v. LaRue* (1972), 409 U. S. 109, 114, 115, 93 Sup. Ct. 390, 34 L. Ed. 2d 342:

"While the States, vested as they are with general police power, require no specific grant of authority in the Federal Constitution to legislate with respect to matters traditionally within the scope of the police power, the broad sweep of the Twenty-first Amendment has been recognized as conferring something more than the normal state authority over public health, welfare, and morals. In *Hostetter v. Idlewild Liquor Corp.*, 377 U. S. 324, 330 [84 Sup. Ct. 1293, 1297, 12 L. Ed. 2d 350 (1964)], the Court reaffirmed that by reason of the Twenty-first Amendment 'a State is totally unconfined by traditional Commerce Clause limitations when it restricts the importation of intoxicants destined for use, distribution, or consumption within its borders.' Still earlier, the Court stated in *State Board v. Young's Market Co.*, 299 U. S. 59, 64 [57 Sup. Ct. 77, 79, 81 L. Ed. 38 (1936)]:

" 'A classification recognized by the Twenty-First Amendment cannot be deemed forbidden by the Fourteenth.'

"These decisions did not go so far as to hold or say that the Twenty-first Amendment supersedes all other provisions of the United States Constitution in the area of liquor regulations. In *Wisconsin v. Constantineau*, 400 U. S. 433 [91 Sup. Ct. 507, 27 L. Ed. 2d 515 (1971)], the fundamental notice and hearing requirement of the Due Process Clause of the Fourteenth Amendment was held applicable to Wisconsin's statute providing for the public posting of names of persons who had engaged in excessive drinking. But the case for upholding state regulation in the area covered by the Twenty-first Amendment is undoubtedly strengthened by that enactment: . . ."

*California v. LaRue, supra,* held that regulations involving prohibition of nude dancing at licensed establishments did not rise to the level of presentation of issues to be considered under the first and fourteenth amendments, in view of the rational conclusions of the administrative agency and the presumption of the validity of state regulation in the subject area of intoxicating liquors required by the twenty-first amendment. In an

annotation to this case, 34 L. Ed. 2d 805, Comment
Note—*Extent of State Regulatory Power Under Twenty-
First Amendment,* sec. 2, pp. 807, 808, it was stated that:

"It is settled that under the Twenty-first Amendment,
the states have the power to absolutely prohibit or to
limit and regulate traffic in intoxicating liquors within
their borders, and that such power is not generally lim-
ited by the commerce clause or the equal protection and
due process clauses of the Federal Constitution, insofar
as such regulations discriminate against or impose spe-
cial burdens on activities and persons involved in such
traffic.

"In consonance with the foregoing principles, it has
been held that pursuant to the Twenty-first Amendment,
a state may (1) establish a state monopoly on the im-
portation and sale of intoxicating liquors; (2) require
a liquor license or permit and impose a license fee or a
tax with regard to importing, transporting, or selling
intoxicating liquors within the state, (3) require out-
of-state liquor manufacturers to sell their products to
state liquor licensees for cash only; (4) prohibit, in
retaliation against the laws of another state, the im-
portation of intoxicating liquors manufactured in that
state; (5) prohibit the importation of intoxicating liquors
which are not registered in the United States Patent
Office; (6) regulate the price; and the containers and
labels of intoxicating liquors; and (7) regulate the type
of entertainment in establishments which the state li-
censes or permits to sell intoxicating liquors. . . ."

This proposition was reiterated by the supreme court
in *City of Kenosha v. Bruno* (1973), 412 U. S. 507, 515,
93 Sup. Ct. 2222, 37 L. Ed. 2d 109.

This court has also had occasion to consider the matter
of the state police power in the regulation of intoxicating
liquors in relation to other constitutional issues. In
*Vieau v. Common Council* (1940), 235 Wis. 122, 124,
292 N. W. 297, it was stated that: "The regulation of
the sale of intoxicating liquors does not come within the
equality provisions of the United States Constitution."

In *State ex rel. Martin v. Barrett* (1946), 248 Wis. 621, 626, 22 N. W. 2d 663, it was held that: "In the exercise of its police power the legislature has plenary authority to prohibit traffic in liquor or restrict it in any reasonable manner." The case also affirmed the proposition that the regulation of the sale of intoxicating liquor does not come within the purview of the equality provision of the United States Constitution. *Milwaukee v. Piscuine* (1963), 18 Wis. 2d 599, 119 N. W. 2d 442, recognizes the same principle and makes it clear that this court was unequivocally stating that legislative power is most extensive in the regulation of the liquor-traffic industry.

Sec. 176.05 (21), Stats., is legislation which, in effect, represents a policy decision of the legislature to enable certain well-defined persons to apply for an intoxicating liquor license. The wisdom of increasing the number of available licenses was for the legislature. The test used in considering the constitutionality of statutes enacted under the police power is one of reasonableness. *State ex rel. Martin v. Barrett, supra.* We are of the opinion that sec. 176.05 (21) (h), represents a reasonable enactment under the police powers because of the state's broad powers over the liquor industry.

While not germane to the issues presented in this case, it is perhaps well to recognize that not all police power legislation relating to liquor traffic is ipso facto above constitutional challenges. *California v. LaRue, supra,* recognizes this and it is emphasized in the concurring opinion of Mr. Justice STEWART, at page 120, footnote:

"* This is not to say that the Twenty-first Amendment empowers a State to act with total irrationality or invidious discrimination in controlling the distribution and dispensation of liquor within its borders. And it most assuredly is not to say that the Twenty-first Amendment necessarily overrides in its allotted area any other relevant provision of the Constitution. (Citations omitted.) . . ."

However, in this case we do not deal with unreasonable, irrational, immutable classifications or invidious discrimination. Today it is possible that such arguments might possibly be advanced in *Vieau v. Common Council, supra* (alienage), or *Milwaukee v. Piscuine, supra* (sex characteristics), but such facts are not in the instant case.

A statute is presumed to be constitutional and will be held unconstitutional only when it appears so beyond a reasonable doubt and the burden of proving unconstitutionality is on the party attacking the statute. *State ex rel. Hammermill Paper Co. v. La Plante, supra,* pp. 45–47.

In our opinion, the plaintiffs have neither assumed nor met the burden of establishing the unconstitutionality of sec. 176.05 (21) (h), Stats., beyond a reasonable doubt. They argue that this legislative classification should be subject to "strict scrutiny."

It is true that the supreme court has in recent years subjected to strict scrutiny legislation embodying classifications based on characteristics beyond the control of those affected by such classification. Thus, race, alienage, and national origin, have been considered to be classifications based on immutable characteristics requiring that any legislative enactment based on such classification be strictly scrutinized. *Graham v. Richardson* (1971), 403 U. S. 365, 371, 372, 91 Sup. Ct. 1848, 29 L. Ed. 2d 534. However, the immutable characteristics of such groups and the fact that they may be considered "discreet and insular minorit[ies]," factors relied upon to justify strict scrutiny of classifications based on race, alienage and national origin, are not applicable to the classifications involved herein. The challenged statute regulates quotas for business enterprises which applicants for licenses have chosen to pursue. The classifications involve only the nature of the business enterprise

engaged in at a particular time and the territory in which that enterprise is located. They in no way relate to purely personal characteristics of the applicant. Therefore, there is no justification for the argument that the classifications should be subject to strict scrutiny.

Regardless of the motivating circumstances behind the enactment of this particular provision, the overall purpose of the provisions of the liquor license quota statute is the regulation of the liquor traffic. This purpose is established to be well within the plenary power of the legislature under the police power of the state, *State ex rel. Martin v. Barrett, supra,* and the power conferred by the twenty-first amendment, *California v. LaRue, supra.* The particular provision challenged herein essentially provides for a one-time quota exemption, specifically delineated in terms of potential increase in numbers and time. The effect is to increase the absolute number of liquor licenses which are to be issued by the governing body. The purpose of increasing or decreasing the number of licenses to be issued under sec. 176.05 (21) (h), Stats., is well within the legitimate scope of governmental power.

The plaintiffs have not met their burden of establishing that the classification established by sec. 176.05 (21) (h), Stats., is unreasonable. *State v. Mertes* (1973), 60 Wis. 2d 414, 418, 210 N. W. 2d 741.

Plaintiffs allege a denial of due process because the word "business" is so lacking in definition as to make the statute unconstitutionally void for vagueness. In *Williams v. Hofmann* (1974), 66 Wis. 2d 145, 152, 153, 223 N. W. 2d 844, this court set forth guidelines for considering attacks on the constitutionality of a statute based on vagueness of terms:

". . . In *Forest Home Dodge, Inc. v. Karns* the court summarized the void-for-vagueness doctrine applicable to civil statutes:

" ' "A statute is not necessarily void merely because it is vague, indefinite, or uncertain, or contains terms not susceptible of exact meaning, or is stated in general terms, or prescribes a general course of conduct, or does not prescribe precise boundaries, or is imperfect in its details, or contains errors or omissions, or because the intention of the legislature might have been expressed in plainer terms, and questions may arise as to its applicability, and opinions may differ in respect of what falls within its terms, or because the statute is difficult to execute."

" 'Unless a statute is so vague and uncertain that it is impossible to execute it or to ascertain the legislative intent with reasonable certainty, it is valid. *Marshfield v. Cameron* (1964), 24 Wis. 2d 56, 61, 127 N. W. 2d 809; 82 C. J. S., Statutes, p. 113, sec. 68.' "

In view of the pronouncement of this court in *Williams v. Hofmann, supra,* we are of the opinion that this argument of the plaintiffs must be considered to be without merit.

No argument has been made that the plaintiffs have been denied procedural due process. We deem none could be made. *See: City of Kenosha v. Bruno, supra,* page 117.

Sec. 176.05 (21) (h), Stats., provides that by a vote of three-fourths of all members of the governing body, a person holding a Class "B" fermented malt beverage license could be granted a Class "B" retail intoxicating liquor license. The statute prescribes a time period within which applications could be made and delineated the qualifications of those applying for such licenses. The town board consisted of three members. The statute, therefore, dictates a unanimous vote of three town board members.

Defendant-McGinnis was a town board member, a holder of a Class "B" fermented malt beverage license, meeting the statutory requirements, and one who made a timely application for a Class "B" retail intoxicating

liquor license. If he were to remain a member of the town board, as chosen by the electors of the town, the statute required him to vote on his own application. Certainly a statute which creates such a situation cannot be looked upon with commendation. However, under the particular facts of this case, we are of the opinion it does not offend the due process guarantees of the plaintiffs and does not rise to constitutional dimensions. If the town board had granted a license to McGinnis while denying such a license to another qualified person, a different situation would have been presented. Also, it is not alleged that any other applicant was denied due process because McGinnis voted for his own license.

In the instant case, the license is being issued under a special quota exemption, with specifically delineated requirements which must be met. Each applicant had to meet the general requirement of the statute and make the same showing under the statute. Because of the nature of the quota exemption, the fact that McGinnis qualified for and received a license did not result in a lesser number of licenses being available under the exemption for issuance to other similarly qualified.

*By the Court.*—Judgment affirmed.